**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Christopher Beaulieu
a/k/a Crystal Beaulieu

    v.                       Civil No. 16-cv-471-JD

New Hampshire Governor et al.[1]

## REPORT AND RECOMMENDATION

Before the court is plaintiff Christopher "Crystal"

Beaulieu's complaint (Doc. No. 1), and amended complaint (Doc.

No. 12), filed pursuant to 42 U.S.C. § 1983, asserting that the

defendants, a New Hampshire State Prison ("NHSP") inmate and New

---

[1]The defendants named in the complaint (Doc. No. 1) and amended complaint (Doc. No. 12) are: (former) New Hampshire Governor Margaret W. Hassan; New Hampshire Department of Corrections ("DOC") Commissioner William L. Wrenn; New Hampshire State Prison ("NHSP") Warden Michael A. Zenk; DOC Director of Professional Standards Colon K. Forbes; DOC Chief Investigator Marc Marchand; DOC Investigator James Azzara; DOC Investigator Sgt. Joel A. Dinsmoor; NHSP Special Housing Unit ("SHU")/Closed Custody Unit Capt. Michael Edmark; SHU Security Lt. Paul Carroll; DOC Secure Psychiatric Unit Sgt. Gary Lydick; Corrections Officer ("CO") G. Nimorowski; Shawn M. Cook; Lt. Scott Marshall; Investigator and former SHU CO David Dionne; Sgt. Jeremiah Totten; CO Dominic Salce; Probation/Parole Officer Scott Harrington; CO Timothy Miller; CO Young, whose first name is unknown ("FNU"); CO Jason Caruso; Capt. John Masse; Lt. Andrew Newcombe; Sgt. FNU Pelletier; Unit Manager Kathleen Anderson; FNU Mizhall; CO FNU Ward; CO FNU Camirand; CO Christopher Brownlie; Cpl. Pat Wright; Maj. Jon Fouts; Jean Carroll; DOC Hearings Officer ("HO") Linda J. Paulsen; HO FNU Barton; Director FNU Kench; Lt. FNU Morin; Sgt. FNU Denis; Sgt. FNU Howland; Jon Hanson; Paula Mattis; Capt. FNU Boynton; SHU Sgt. Stefan Czak; CO Eric Turner; Cpl. FNU Paz; CO FNU Lamontagne; Lt. John Aulis, and Cpl. FNU Stone.

Hampshire Department of Corrections ("DOC") employees, have violated Beaulieu's federal constitutional rights and have engaged in tortious conduct rendering them liable under state law. The complaint and amended complaint are before the court for preliminary review, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1).

## Discussion

### I. Preliminary Review Standard

In determining whether a pro se pleading states a claim, the court construes the pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### II. Discussion

#### A. Discrimination and Equal Protection

##### 1. Standard

Beaulieu asserts claims of discrimination based on her status as a transsexual inmate and she also alleges that she has been assigned to a single cell in SHU in a discriminatory

manner.  "'The Equal Protection Clause contemplates that
similarly situated persons are to receive substantially similar
treatment from their government.'"  Davis v. Coakley, 802 F.3d
128, 132 (1st Cir. 2015) (citation omitted).  To establish an
equal protection claim, a plaintiff needs to allege facts
showing that "'(1) the [plaintiff], compared with others
similarly situated, was selectively treated; and (2) that such
selective treatment was based on impermissible considerations
such as race, religion, intent to inhibit or punish the exercise
of constitutional rights, or malicious or bad faith intent to
injure [the plaintiff].'"  Id. at 132-33 (citations omitted).
"Unequal treatment that does not involve a fundamental right or
suspect classification is justified if it bears a rational
relation to legitimate penal interest."  Druley v. Patton, 601
F. App'x 632, 635 (10th Cir. 2015) (citing City of Cleburne v.
Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985)).

      2.   Gender Identity

Beaulieu is a transsexual inmate who has been incarcerated
since January 6, 2011 at the NHSP, a facility that almost
exclusively houses male prisoners.  Beaulieu asserts that, since
2011, prison officials have been aware that she is a
transsexual, and that she is at a high risk of harm at the

prison because she is a transsexual.[2]  During her incarceration

at the NHSP, Beaulieu has held herself out as a transsexual

female, and has attempted to live as a female, including the way

she wears her clothing, wears makeup, and styles her hair.  In

October 2015, during her present incarceration, Beaulieu began

hormone treatment.

Beaulieu alleges that the DOC allows nontranssexual female

inmates in its custody to have makeup, earrings, hair dryers,

and other items available in the female property catalog.

Beaulieu claims that, as a transsexual woman, she is being

treated differently than other women in DOC custody, as she has

no access to those items.  Beaulieu asserts that on occasions

when she has been able to wear makeup in the prison, she has not

had trouble with any inmate on that basis.

While housed in the prison's Special Housing Unit ("SHU"),

Beaulieu asserts that she, like other SHU inmates, is only able

to shave once a month.  As a result, she has been forced to grow

facial hair that, due to her female gender identity, has caused

her severe distress.

Beaulieu alleges that she has made efforts to have the

policies denying her access to female items and shaving

---

[2]Plaintiff identifies as female and the court honors her
preference for a female name and female pronouns.

reversed.  She asserts that Warden Michael Zenk has been
unwilling to change policies at the NHSP to allow her to have
those items and to shave more frequently while in SHU.

Beaulieu's Fourteenth Amendment equal protection claims
concerning the denial of female items and the inability to shave
more than once a month while in SHU are sufficiently stated to
survive preliminary review.  The only defendant Beaulieu has
specifically named as to this claim is Warden Zenk.  In an Order
issued simultaneously with this Report and Recommendation (the
"Simultaneous Order"), the court directs service of Fourteenth
Amendment equal protection claims, alleging the denial of access
to female items and more frequent opportunities to shave at SHU,
upon Zenk.

### 3.   Single-Cell Housing

Beaulieu alleges that while housed in SHU from 2015 through
2017, she has been generally denied cellmates.  Beaulieu was
told that she was in a single cell due to her history of
accusing cellmates of sexual assault or having cellmates accuse
her of sexual assault.  Between 2015 and 2017, several other
transsexuals have been housed in SHU.  Beaulieu alleges that the
other transsexual inmates in SHU have been allowed to have
cellmates, although at least one of them has accused cellmates,
and/or has been accused by cellmates, of sexual assault.

To the extent Beaulieu states that any defendant treated her differently than other inmates in SHU by denying Beaulieu a cellmate, the facts alleged do not indicate that Beaulieu was treated differently because of her status as a transsexual inmate or her affiliation with any other class of individuals. Furthermore, Beaulieu has not pleaded facts to state a claim that she was singled out for discrimination for reasons unique to her.  Such a "class of one" equal protection claim requires proof of "'an extremely high degree of similarity between [plaintiffs] and the persons to whom they compare themselves'"; Beaulieu must show that she and the other comparator inmate "'engaged in the same activity . . . without such distinguishing or mitigating circumstances as would render the comparison inutile.'"  Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (citations omitted).  In addition, a "class of one" plaintiff must generally plead facts to "show that the defendant's differential treatment of the plaintiff was motivated by 'bad faith or malicious intent to injure.'"  Id. (citation omitted).

There are numerous factors that might impact prison officials' housing decisions, including fluctuations in inmate population numbers, the nature of the assault claims that an inmate has lodged against her cellmate or has had asserted against her, as well as other factors that are unique to the

6

inmates who might be housed together.  Beaulieu has not pleaded
sufficient facts to show that any transsexual SHU inmate allowed
to have a cellmate was similarly situated to Beaulieu in all
relevant respects.  Accordingly, Beaulieu has failed to state a
claim of a violation of her right to equal protection based on
being housed without a roommate in SHU, and the district judge
should dismiss that claim.

**B.    Endangerment**

1.    Standard

The Eighth Amendment "prohibits prison officials from
depriving inmates of 'the minimal civilized measure of life's
necessities.'"  Brown v. Plata, 131 S. Ct. 1910, 1959 (2011)
(citation omitted).  "'[A] prison official cannot be found
liable under the Eighth Amendment for denying an inmate humane
conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety.'"
Giroux v. Somerset Cty., 178 F.3d 28, 32 (1st Cir. 1999)
(citations omitted).  Beaulieu alleges that defendants violated
her Eighth Amendment rights by creating, or failing to prevent,
a significant risk to her safety.

2.    Endangerment Claims to be Served

The following endangerment claims, which have been asserted
both as Eighth Amendment violations and as state law negligence

claims, may proceed:

- Claims against SHU Sgt. Stefan Czak and Corrections
  Officer ("CO") Eric Turner for housing Beaulieu with
  inmate Shawn Cook in March 2015, knowing that Beaulieu
  was at particular risk of sexual victimization and
  that Cook had a history of sexual assault;

- Claims that defendants Capt. Michael Edmark and Lt.
  Scott Marshall, knowing that Beaulieu suffers from
  mental health problems, housed Beaulieu in a cell that
  was situated underneath inmate Cook's cell, on May 20,
  2015, while the investigation of Beaulieu's sexual
  assault claim against Cook was ongoing, and knowingly
  allowing Cook to harass and threaten Beaulieu, thus
  creating a substantial risk to Beaulieu's mental
  health;

- A claim that an unnamed officer, now identified by the
  court as John Doe #1,3 on May 27, 2016, put Beaulieu
  in a cell with an inmate who the officer knew or
  should have known was a member of a gang with which
  Beaulieu had prior difficulties, thus placing Beaulieu
  at a substantial risk of serious harm;

- Claims that CO Christopher Brownlie told another
  inmate that Beaulieu was a "rat," CO Young told
  inmates that Beaulieu was a "rat" and a "skinner," and
  CO Dominic Salce yelled, where all of the inmates on
  Beaulieu's tier could hear him, that Beaulieu had
  requested statement forms, which Beaulieu claims Salce
  knew would cause other inmates to think Beaulieu is a
  "rat," thus placing Beaulieu at a substantial risk of
  serious harm from other inmates;

- Claims that Warden Zenk, Maj. Jon Fouts, Capt.
  Boynton, Lt. Paul Carroll, Sgt. Gary Lydick, Sgt.
  Jeremiah Totten, Cpl. Stone, and Cpl. Pat Wright,
  knowing that Beaulieu suffers from mental health
  problems, allowed Brownlie to work in proximity to,

---

[3]Beaulieu is expected to use the discovery process to obtain
the name of any defendant that the court has identified as a
"Doe" defendant in this action, and to move promptly to amend
the complaint accordingly.

and interact with, Beaulieu during the investigation
of Beaulieu's sexual assault accusation against
Brownlie, and allowing Brownlie to harass Beaulieu,
thus creating a substantial risk of serious harm to
Beaulieu's mental health;

- After July 28, 2016, Sgt. Lydick, Lt. Carroll, and
Capt. Edmark, knowing that CO David Dionne had
previously used excessive force on Beaulieu and
harassed Beaulieu, and knowing that Beaulieu suffers
from mental health problems, allowed Dionne to
continue to work in proximity to Beaulieu, thus
creating a substantial risk of serious harm to
Beaulieu's mental health; and

- On July 6, 2017, Sgt. Totten, CO Jason Caruso and Lt.
Marshall denied Beaulieu's request to see a mental
health worker when Beaulieu told the officers she was
actively suicidal and instead told Beaulieu to "just
kill [her]self," and laughed at and provoked Beaulieu,
thus creating a substantial risk of serious harm to
Beaulieu's mental health.

In the Simultaneous Order, the court directs service of these
endangerment claims on the defendants named in those claims.

### 3.   Denial of Protective Custody

On December 5, 2016, Beaulieu alleges that while Sgt.
Totten was escorting her to I-Tier, Beaulieu told Totten that
she was in fear for her safety on I-Tier, but Totten attempted
to force her to live there anyway, and would not let her seek
protective custody status.  Beaulieu was not placed on I-Tier at
that time.  Beaulieu's allegations concerning Totten's refusal
to place Beaulieu in protective custody are insufficient to
demonstrate that Totten was aware of an actual, substantial risk

to Beaulieu's safety, and failed to protect Beaulieu from that risk. Accordingly, the district judge should dismiss Beaulieu's endangerment claim alleging that Totten denied her protective custody.

### 4. SHU Shaving Policy

Beaulieu asserts that while in SHU, inmates are only allowed to shave once a month. Beaulieu has lived in SHU, as a transsexual, for much of the last six years, and states that, although she is receiving hormone treatment, the SHU shaving policy results in her growing facial hair between shaves. Beaulieu states that defendants do not except her from the SHU shaving policy, although they are aware that she has mental health problems, and that she is a transsexual. Beaulieu has failed, however, to allege that defendants were actually aware that not allowing Beaulieu to shave more frequently would create a substantial risk of serious harm to her mental health. Accordingly, Beaulieu has failed to state an endangerment claim arising from imposition of the SHU shaving policy, and the district judge should dismiss that claim.

## C. **Retaliation**

### 1. Standard

To state a First Amendment retaliation claim, an inmate must allege: (1) that the conduct which led to the retaliation

was protected by the First Amendment; (2) that she or he

suffered adverse action at the hands of the prison officials;

and (3) that there was a causal link between the exercise of her

or his First Amendment rights and the adverse action taken.  See

Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  De minimis

reactions to protected speech are not actionable.  See Morris v.

Powell, 449 F.3d 682, 685-86 (5th Cir. 2006).  An adverse act

taken in response to protected conduct is not de minimis,

however, if it would deter an individual of ordinary firmness

from exercising his or her First Amendment rights.  See id.; see

also Starr v. Dube, 334 F. App'x 341, 342-43 (1st Cir. 2009).

### 2.   Retaliation Claims to be Served

Beaulieu has alleged the following First Amendment

retaliation claims which may proceed and, of which the court

directs service in the Simultaneous Order:

- In retaliation for Beaulieu's complaint against CO
Chandonnet, accusing that officer of sexually assaulting
her, as well as Beaulieu's grievances and lawsuits filed
against DOC staff members, Beaulieu was charged by an
unnamed officer, now identified by the court as John Doe
#2, with a disciplinary violation for disrespecting
Chandonnet for verbally objecting to him touching her
chest; and Sgt. Pelletier, CO John Aulis, Lt. Andrew
Newcomb and other officers charged her with disciplinary
infractions;

- Shortly after Beaulieu and NHSP Reception and
Diagnostics Unit Manager Kathleen Anderson reviewed video
evidence relevant to Beaulieu's pending civil lawsuits
against DOC staff members, a "Keep Away" directive was
placed by unnamed prison officials, identified by the court

as "Keep Away John Does," that prevented Beaulieu from
having any contact with inmate Steven Newcombe, in
retaliation for Beaulieu's grievances and lawsuits against
DOC staff members;

● Between February 27, 2017 and May 10, 2017, while
Beaulieu was living in the NHSP Hancock Unit, Lt. Newcomb,
Sgt. Pelletier, Capt. John Masse, Cpl. Paz, and CO
Lamontagne wrote Beaulieu up for numerous disciplinary
violations, in retaliation for her previous accusations of
sexual assault against a corrections officer, and
grievances and lawsuits she filed against DOC staff
members; and

● In retaliation for Beaulieu's complaint against CO
Brownlie, accusing that officer of sexually assaulting her,
as well as Beaulieu's grievances and lawsuits filed against
other DOC staff members: Sgt. Lydick inflicted unnecessary
force on Beaulieu, causing her severe pain, on May 11,
2017; officers who work with Brownlie, including CO Timothy
Miller, charged Beaulieu with four false disciplinary
reports; Cpl. Wright told Beaulieu to kill herself in order
to cause Beaulieu severe distress; CO Young told other
inmates that Beaulieu is a "rat" and a "skinner"; and Sgt.
Totten, CO Caruso, Lt. Carroll, Capt. Edmark, and Sgt.
Lydick inflicted unprovoked excessive force on Beaulieu by
tazing and kicking her, and placing her in a restraint
chair on July 6, 2017.

3. De Minimus Adverse Acts

In addition to the retaliatory acts asserted above,

Beaulieu has alleged retaliatory acts that the court finds are

de minimis, and thus insufficient to support a retaliation claim

upon which relief might be granted. Specifically, Beaulieu has

alleged that defendants have: subjected her to verbal

harassment; subjected her to unfavorable housing conditions,

including denial of a cellmate and placement in dayrooms;

threatened Beaulieu with transfer to the Northern New Hampshire

12

Correctional Facility ("NCF"); denied Beaulieu some of her property for one or two days at a time; searched and/or "trashed" her cell; falsely accused Beaulieu of having a romantic and/or sexual relationship with another inmate; and charged only Beaulieu with a disciplinary violation, on July 18, 2017, and did not charge the other inmate with whom Beaulieu was violating prison rules.  Accordingly, as to these acts, Beaulieu has failed to state retaliation claims upon which relief might be granted, and the district judge should dismiss the retaliation claims based on those allegations.

### D. **Disciplinary Hearings**

Beaulieu alleges that during the many disciplinary hearings she has been involved in during her incarceration at the NHSP, she has been subjected to unfair treatment, in violation of her Fourteenth Amendment due process rights.  Due process requirements apply only to the deprivation of protected interests in life, liberty, or property.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); González-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010).  Protected liberty interests, for a prisoner challenging the imposition of sanctions through disciplinary proceedings, "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force
nonetheless imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life."
Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted).

Beaulieu alleges that, after disciplinary hearings at which
Beaulieu asserts she was denied due process, HO Paulsen and HO
Barton sanctioned her with the temporary loss of canteen, phone
privileges, and up to fifty days of punitive segregation.  Such
disciplinary sanctions are not atypical or significant "in
relation to the ordinary incidents of prison life," id., and
thus do not give rise to a viable due process claim.  See, e.g.,
id. at 484 (30 days in punitive segregation did not implicate
liberty interest); Umondak v. Ginsel, 426 F. App'x 267, 268-69
(5th Cir. 2011) (loss of recreation for 25 days did not
establish due process violation); Towle v. Eldridge, No. 11-cv-
293-SM, 2011 WL 6965471, at *2-*3, 2011 U.S. Dist. LEXIS 150862,
at *6, *9-*10 (D.N.H. Dec. 20, 2011) (49 days in pending
administrative review status in segregation; 75 days loss of
phone and canteen; 75 hours of extra duty; 20 days in punitive
segregation (10 days imposed and 10 days suspended), were not
atypical and significant hardships), R&R approved, No. 11-cv-
293-SM, 2012 WL 40458, 2012 U.S. Dist. LEXIS 2611 (D.N.H. Jan.
6, 2012).  Accordingly, the district judge should dismiss

Beaulieu's claims alleging that she was denied due process protections at disciplinary hearings.

Beaulieu further alleges that supervising prison officials were negligent for allowing disciplinary hearings to be held that violate due process. As Beaulieu fails to assert any federal due process claim, however, the district judge should decline to exercise jurisdiction over Beaulieu's state law negligence claims, without prejudice to Beaulieu's ability to assert such claims in state court.

### E. Excessive Force

#### 1. Standard

The Eighth Amendment protects a prisoner from excessive force that amounts to cruel and unusual punishment. <u>See</u> <u>Skinner v. Cunningham</u>, 430 F.3d 483, 488 (1st Cir. 2005). In determining whether a plaintiff has established a claim for excessive force, the "core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). Relevant factors include: (1) the need for the use of force, (2) the relationship between the need and the amount of force applied, (3) the extent of injury inflicted, (4) the "threat 'reasonably perceived by the responsible officials,'" and (5) "'any efforts made to

temper the severity of a forceful response.'" Id. (citing
Whitley v. Albers, 475 U.S. 312, 321 (1986)).

"[D]e minimis uses of physical force, provided that the use
of force is not of a sort repugnant to the conscience of
mankind," however, do not violate the Eighth Amendment. Hudson,
503 U.S. at 9-10 (internal quotation marks and citations
omitted). "An inmate who complains of a push or shove that
causes no discernible injury almost certainly fails to state a
valid excessive force claim." Wilkins, 559 U.S. at 38 (internal
quotation marks and citations omitted).

### 2. Excessive Force Claims to be Served

Beaulieu has alleged excessive force claims that survive
preliminary review, as follows:

- On an unspecified date in 2016, CO G. Nimorowski, while
  escorting Beaulieu between areas of the prison, without
  provocation and while Beaulieu was handcuffed, pulled and
  twisted Beaulieu's arm, and then, when Beaulieu told
  Nimorowski that he was hurting her, Nimorowski forcefully
  pushed her handcuffs toward her elbows, causing her pain;

- On December 5, 2016, Sgt. Jeremiah Totten was escorting
  Beaulieu between areas of the prison, and when Beaulieu
  refused to live on a particular tier in SHU, and then
  stated that she was suicidal, Totten slammed Beaulieu's
  head against the window, held her against the window by her
  arms, and, when Beaulieu, in response, smashed her own head
  against the window, Totten slammed Beaulieu against a
  doorframe and then slammed her face into the floor, while
  Beaulieu was not resisting Totten's attempts to restrain
  her;

- Shortly after May 11, 2017, in response to Beaulieu's

16

accusation of sexual assault against CO Brownlie, Sgt. Lydick, without provocation, forced Beaulieu to the ground while she was in handcuffs, without allowing her the opportunity to get down voluntarily, and other unnamed officers, now identified by the court as "May 11 John Does," then got "on" Beaulieu while she was on the floor in handcuffs, causing her severe pain; and

- On May 27, 2017, in response to Beaulieu smashing her cup, which she did because she was suicidal and had been refused mental health care, CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick forcibly pulled Beaulieu's arms through the tray slot in her door and handcuffed her, put her on the floor in the SHU rotunda, where Lydick shot her with a Tazer and, before she got off the floor, Edmark kicked her in the face, and after she got up, Caruso and Young pulled her arms while she was handcuffed, then dropped her to the ground on her shoulder while the other officers present fell on top of her and finally, placed her in a restraint chair for four hours.

In the Simultaneous Order, the court directs service of these excessive force claims on the defendants named in those claims.

### 3. July 28, 2016 Incident

Beaulieu alleges that on July 28, 2016, she engaged in self-harming behavior, and was placed in a restraint chair. Although she did not resist this restraint, Beaulieu claims that the officers who strapped her into the chair did so too forcefully, and that CO Dionne placed her in a headlock while she was being strapped into the restraint chair, causing her to have a bruise that lasted for three days and a stiff neck that lasted for two days.

Even generously construed, the facts asserted by Beaulieu do not make out more than a "de minimis" use of force by Dionne

and the officers who strapped Beaulieu into the chair.  Further, as Beaulieu describes it, the officers were acting to protect her in a situation in which was actively trying to harm herself. Nothing in the facts asserted suggests that Dionne or any other officer struck or otherwise attempted to inflict pain on Beaulieu, or that the amount of force used was disproportionate to the situation.  Accordingly, the district judge should dismiss Beaulieu's claim that Dionne and other officers exerted excessive force against her on July 28, 2016.

### F.   Verbal Harassment

Beaulieu alleges that she was verbally harassed by a number of officers on different occasions during her incarceration. Allegations of verbal threats and harassment are insufficient to assert any constitutional violation.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass. 1999) (collecting cases) (without more, verbal harassment by officers does not violate inmate's constitutional rights).  Beaulieu's verbal harassment claims, if true, allege reprehensible and unprofessional behavior.  They do not, however, assert constitutional violations, and the district judge should dismiss all of Beaulieu's verbal harassment claims.

### G.   Conditions of Confinement

The Eighth Amendment "prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's

necessities.'" Brown, 131 S. Ct. at 1959 (citation omitted).
An Eighth Amendment claim challenging the conditions of a
prisoner's confinement has an objective and subjective
component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To
satisfy the objective component of a prison conditions claim,
the deprivations alleged must be "extreme." Hudson v.
McMillian, 503 U.S. 1, 9 (1992). The subjective component of an
Eighth Amendment claim requires the plaintiff to demonstrate
that the prison officials acted with deliberate indifference to
the plaintiff's health or safety. See Farmer v. Brennan, 511
U.S. 825, 834 (1994).

Beaulieu's conditions of confinement claims assert that, at
times, Beaulieu was housed in a dayroom that was dirty and
subject to flooding, where she had to sleep and eat on a
mattress on the floor, and where there were bugs. Beaulieu also
asserts that clothing she sends to the laundry is often not
returned. As a result, she has to order new items, and she is
frequently provided with clothing that is too big for her. As a
result, she has at times been reduced to only one of each
clothing item, which she had to wash in her cell.

In regard to both her dayroom housing and laundry problems,
Beaulieu has not described the kind of extreme conditions that
would give rise to a constitutional violation. Further,

Beaulieu has not suggested that any defendant who, when causing her to be housed in a dayroom or failing to provide her with more than one set of clothing in Beaulieu's size, was aware of any excessive risk to Beaulieu's health and safety created thereby, but disregarded that risk.  Accordingly, Beaulieu's assertions do not suffice to state an Eighth Amendment claim based on the conditions of her confinement, and the district judge should dismiss these conditions of confinement claims.

### H.   Violations of Prison Policy

Beaulieu asserts that a number of defendants in this action violated various prison policies in committing the acts described in the complaint, the amended complaint, and the motion for preliminary injunction.  "An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim."  McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012); see Querido v. Wall, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL 5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).  Accordingly, Beaulieu cannot state a claim for relief on the basis of the defendants' violation of prison policies, and the district judge should dismiss all such claims from this action.

### I.   Violations of PREA

Beaulieu asserts that defendants have violated the Prison
Rape Elimination Act ("PREA"), by allowing individuals against
whom she has made sexual assault allegations to have contact
with her or be in proximity to her.  The PREA does not provide
Beaulieu with a private right of action.  See Saunders v.
Pelkie, No. 15-CV-0225-JD, 2015 U.S. Dist. LEXIS 101067, at *2-
*3 (D.N.H. June 26, 2015), R&R approved, 2015 U.S. Dist. LEXIS
102715 (D.N.H. July 31, 2015).  Accordingly, the district judge
should dismiss all of Beaulieu's claims asserting that
defendants have violated that statute.

J.   **Destruction of Property**

Beaulieu claims she was deprived of her property, without
due process, when officers destroyed her property.  "[A]n
unauthorized intentional deprivation of property by a state
employee does not constitute a violation of the procedural
requirements of the Due Process Clause of the Fourteenth
Amendment if a meaningful postdeprivation remedy for the loss is
available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  The
State of New Hampshire provides an adequate postdeprivation
remedy pursuant to N.H. Rev. Stat. Ann. §§ 541–B:9 and 541–B:14
(1997) (providing a post-deprivation means of recouping property
loss attributable to the State).  Beaulieu has failed to
demonstrate that the remedy provided by the state is unavailable

to her or inadequate to compensate her.  Accordingly, the
district judge should dismiss Beaulieu's due process claim
concerning the destruction of her property.

### K.    Denial of Access to the Courts

Beaulieu alleges that the officers' destruction or
withholding of her legal materials violated her First Amendment
right to meaningfully access the courts.  To state such a claim,
Beaulieu must show "that an actionable claim has been lost or
rejected or that presentation of the claim is currently being
prevented" due to the deprivation of her legal materials.
Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 WL 205290, at
*1, 1997 U.S. App. LEXIS 8616, at *2-*3 (1st Cir. Apr. 25, 1997)
(unpublished table decision) (citing Lewis v. Casey, 518 U.S.
343 (1996)).  In other words, Beaulieu must show that she has
been actually injured with respect to her ability to pursue a
nonfrivolous claim that she has a right to litigate.  See Lewis,
518 U.S. at 349-52.

Beaulieu generally alleges that the deprivation of her
legal materials interfered with her ability to litigate two
civil lawsuits in this court, but she does not indicate what
specific injury was done to either case because she lacked legal
materials that prison officials destroyed.  Accordingly,
Beaulieu has failed to state a claim for the denial of access to

the courts upon which relief might be granted, and the district judge should dismiss this claim.

### L. __Denial of Medical Care__

At various points in her pleadings, Beaulieu asserts that one or more defendants subjected her to treatment which caused her severe pain, for which she did not get medical care.  In order to state a constitutional claim for the denial of adequate medical care under the Eighth Amendment, an inmate must allege that defendants committed "acts or omissions . . . sufficiently harmful to evidence deliberate indifference to serious medical needs."  Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011).  At a minimum, the plaintiff must allege facts showing that the defendant possessed a purposeful, knowing, or reckless state of mind, as "'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'"  Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015) (citation omitted) (emphasis in original).

Assuming, without deciding, that Beaulieu's claims of severe pain constitute a serious medical need, Beaulieu has not stated facts to demonstrate that any prison medical personnel, or other prison employee, was aware of Beaulieu's need for care or treatment for those serious medical needs, and denied her such care or treatment.  Beaulieu has failed to state adequate

facts to demonstrate an Eighth Amendment claim based on the denial of medical care, and the district judge should dismiss her medical care claims.

### M. Post-Parole Contact with Steven Newcombe

Beaulieu alleges that her boyfriend, inmate Steven Newcombe, is due to be paroled soon. Beaulieu states that officers have told Beaulieu that she will not be able to have any contact with Newcombe once he is paroled. It appears that Beaulieu is trying to assert a claim that her First Amendment right to intimate association will be violated if and when she is prevented from having contact with Newcombe after he is paroled. Assuming, without deciding, that she could assert such a claim in the future, the claim is not yet ripe for review. Newcombe has not yet been paroled. Further, Beaulieu has failed to name any defendant with the authority to prevent Newcombe and Beaulieu from having contact, after Newcombe's release. At this time, the injury has not yet occurred and Beaulieu's sparse allegations do not demonstrate with sufficient certainty that any injury will occur in the foreseeable future to allow this claim to proceed at this time. This claim should be dismissed as premature, without prejudice to Beaulieu's ability to bring a new action asserting a violation of her First Amendment right to intimate association, against an appropriate defendant, if such

a violation becomes imminent or comes to pass.

### N.    Inmate Shawn Cook

Beaulieu asserts that in March 2015, inmate Shawn Cook
sexually assaulted her, invaded her privacy, and threatened and
harassed her.  Beaulieu's claims against Cook arise under state
law.  The district judge should decline to exercise supplemental
jurisdiction over Beaulieu's claims against Cook under 28 U.S.C.
§ 1367.  The evidence relevant to those claims would necessarily
exceed the scope of evidence relevant to the claims against DOC
employee defendants in this case, against whom constitutional
violations have been alleged.  As such, the claims against Cook
would substantially predominate over the claims that may proceed
in this action, and supplemental jurisdiction is properly
declined on that basis.  See 28 U.S.C. § 1367(c)(2).  The
district judge should dismiss the claims against Cook without
prejudice to Beaulieu's ability to assert them in an action in
state court, and should drop Cook from this case.


### O.    Defendants Not In Narrative

In the caption of her complaint, Beaulieu names a number of
individuals as defendants to this action who are not mentioned
in the narrative of the complaint.  These defendants are: former
New Hampshire Governor Margaret W. Hassan, DOC Commissioner

William Wrenn, DOC Chief Investigator Marc Marchand, DOC

Investigator James Azzara, DOC Investigator Sgt. Joel Dinsmoor,

Probation/Parole Officer Scott Harrington, FNU Mizhall, CO FNU

Ward, CO FNU Camirand, Jean Carroll, Lt. FNU Morin, Sgt. FNU

Denis, Sgt. FNU Howland, Jon Hanson, and Paula Mattis.  Because

Beaulieu has failed to assert that any of these defendants

engaged in any action that violated her rights, they should be

dropped from this action.

     **P.**   **Claims Asserted on Behalf of Other Individuals**

Beaulieu indicates that she is asserting some of her claims

on behalf of other inmates, as well as on her own behalf.  An

inmate, acting pro se, cannot assert the rights of other inmates

in an action in this court.  See 28 U.S.C. § 1654; LR 83.2(d).

Accordingly, Beaulieu may not press any claim on behalf of any

other inmate, and to the extent she seeks to do so, those claims

should be dismissed.

**Conclusion**

For the foregoing reasons, the undersigned magistrate judge

recommends that the district judge dismiss the following claims

Beaulieu has asserted in this case:

- A discrimination claim concerning single-cell housing;
- Eighth Amendment and negligence claims for
  endangerment, arising from the denial of protective
  custody on December 5, 2016;

- Eighth Amendment and negligence claims for endangerment concerning the SHU shaving policy;
- Retaliation claims alleging verbal harassment, unfavorable housing conditions, transfer to NCF, temporary denial of property, searches and or "trashing" of her cell, false accusations that Beaulieu had a romantic and/or sexual relationship with another inmate, and the failure to charge another inmate with a disciplinary violation on July 18, 2017;
- Due process and negligence claims concerning disciplinary hearings;
- Excessive force claims arising out of a July 28, 2016 incident;
- Verbal harassment claims;
- Conditions of confinement claims concerning dayroom housing and laundry;
- Claims alleging violations of DOC policy;
- Claims alleging violations of PREA;
- Due process and access to the court claims arising out of alleged deprivations of property, including legal materials;
- Claims alleging the denial of medical care;
- Claims concerning contact between Beaulieu and Steven Newcombe after Newcombe is paroled;
- State tort Claims asserted against inmate Shawn Cook; and
- Claims asserted on behalf of other individuals.

These claims should be dismissed, without prejudice to Beaulieu's ability to assert her state law claims in state court, or to assert premature claims in a future action in this court, once such claims are ripe. Additionally, the district judge should drop the following defendants from this action: (former) New Hampshire Governor Margaret W. Hassan, DOC Commissioner William L. Wrenn, DOC Director of Professional Standards Colon K. Forbes, DOC Chief Investigator Marc Marchand,

DOC Investigator James Azzara, DOC Investigator Sgt. Joel A. Dinsmoor, DOC Investigator/former SHU CO David Dionne; Probation/Parole Officer Scott Harrington; Unit Manager Kathleen Anderson; CO Ward, whose first name is unknown ("FNU"); CO FNU Camirand; FNU Mizhall; Jean Carroll; HO Linda J. Paulsen; HO Barton; Director FNU Kench; Lt. FNU Morin; Sgt. FNU Denis; Sgt. FNU Howland; Jon Hanson; Paula Mattis; and Shawn M. Cook.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

November 30, 2017

cc: Christopher Beaulieu, a/k/a Crystal Beaulieu, pro se

28