UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Beaulieu
a/k/a Crystal Beaulieu[1]

    v.                          Civil No. 16-cv-471-JD
                                Opinion No. 2018 DNH 134
New Hampshire Governor, et al.


O R D E R

Crystal Beaulieu, who is proceeding pro se and in forma
pauperis, is an inmate at the New Hampshire State Prison for
Men. As allowed on preliminary review, Beaulieu brings claims
against the warden and officers at the prison. The defendants
move to dismiss, arguing that Beaulieu's in forma pauperis
status should be revoked and that she fails to state an
actionable claim. Beaulieu objects to the motion.

I. Revocation of In Forma Pauperis Status

The defendants assert that the court must revoke Beaulieu's
in forma pauperis status because she has had three prior cases
in this court that were dismissed for failure to state a cause
of action. In support, the defendants list Beaulieu v. Quay,
11-cv-514-JL; Beaulieu v. Frisbie Mem. Hosp., 12-cv-191-JD; and

---

[1]Beaulieu has decided to identify as a transsexual female,
using the name "Crystal", and prefers to be referred to with
female pronouns.

_Beaulieu v. Winters_, 15-cv-04-JL.  They acknowledge that in _Quay_ and _Winters_ the magistrate judge recommended that the federal claims be dismissed and that the court decline to exercise supplemental jurisdiction over the state law claims.  The magistrate judge's recommendations were approved, and the cases were dismissed accordingly.

Under 28 U.S.C. § 1915(g), a prisoner may not proceed in forma pauperis if he or she has had three or more prior actions that resulted in "strikes".  A prior action counts against in forma pauperis status as a "strike" if the "action . . . was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  _Id._  The question here is whether a case in which the federal claims were dismissed for failure to state a claim and the court declined to exercise supplemental jurisdiction over the state law claims counts as a strike under § 1915(g).

The First Circuit has not decided whether a prior action counts as a strike when it was dismissed for reasons other than those listed in § 1915(g).  Most of the courts of appeal that have addressed the issue have decided that "[i]f a court dismisses one or more of a prisoner's claims for a reason that is not enumerated in [§ 1915(g)], the case does not count as a strike."  _Fourstar v. Garden City Gr., Inc.,_ 875 F.3d 1147,

1151-52 (D.C. Cir. 2017) (citing cases from seven circuit courts of appeals); see also Washington v. Los Angeles County Sheriff's Dep't, 833 F.3d 1048, 1054-60 (9th Cir. 2016) ("When we are presented with multiple claims within a single action, we assess a [§ 1915(g)] strike only when the 'case as a whole' is dismissed for a qualifying reason under [§ 1915(g)].").  For that reason, "a case in which a court declines to exercise supplemental jurisdiction over state-law claims does not count as a strike." Fourstar, 875 F.3d at 1152; accord Ladeairous v. Sessions, 884 F.3d 1172, 1173 (D.C. Cir. 2018); see also Tolbert v. Stevenson, 635 F.3d 646, 651-55 (4th Cir. 2011) (holding that entire action must be dismissed for an enumerated reason to constitute a strike and citing cases).

Although a few courts have counted cases as strikes under § 1915(g) when supplemental jurisdiction over state law claims was declined, those cases do not provide a reasoned basis for that outcome.  See, e.g., Kroncke v. City of Phoenix, 606 Fed. Appx. 382, 384 (9th Cir. 2015) (memorandum opinion in which court dismissed plaintiff's claims and in one sentence, without explanation, denied plaintiff's motion to remove a strike under § 1915(g)); Gross v. Normand, 576 Fed. Appx. 318, 321 (5th Cir. 2014) (stating without explanation that district court's dismissal based in part on declining supplemental jurisdiction counted as a strike); Warren v. Londorff, 2017 WL 2172433, at *4

3

(C.D. Ill. May 17, 2017) (court declined to exercise
supplemental jurisdiction but nevertheless held that the state
law claim lacked merit and counted the dismissal as a strike);
Beals v. Daniels, 2016 WL 7324085, at *1 (W.D. Okla. Dec. 15,
2016) (declining supplemental jurisdiction but also dismissing
the complaint with prejudice and designating the case as a
strike).  The lack of a reasoned basis for counting a case as a
strike, even when not all claims were dismissed for reasons
stated in § 1915(g), makes those cases unpersuasive,
particularly in light of contrary circuit court authority.  See,
e.g., Washington, 833 F.3d at 1057); Brown v. Megg, 857 F.3d
287, 288 (5th Cir. 2017); Turley v. Gaetz, 625 F.3d 1005, 1008-
09 (7th Cir. 2010).

Based on the persuasive analyses provided by the District
of Columbia Circuit, the Fourth Circuit, and the Ninth Circuit,
along other decisions, the court will not count Quay and Winters
as strikes against Beaulieu for purposes of § 1915(g).  As a
result, Beaulieu's in forma pauperis status is not revoked in
this case.

II.  Motion to Dismiss

The defendants move to dismiss Beaulieu's claims on a
variety of grounds.  They contend that Beaulieu fails to state a
cognizable cause of action in twelve of the thirteen claims that

were allowed on preliminary review.  The defendants also raise affirmative defenses.

In considering a motion to dismiss, the court accepts all well-pleaded facts as true, disregarding mere legal conclusions, and resolves reasonable inferences in the plaintiff's favor.[2] Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). Taken in that light, the complaint must state sufficient facts to support a plausible claim for relief.  In re Curran, 855 F.3d 19, 25 (1st Cir. 2017).  The plausibility standard is satisfied if the factual allegations in the complaint "are sufficient to support the reasonable inference that the defendant is liable." In re Fidelity ERISA Float Litig., 829 F.3d 55, 59 (1st Cir. 2016) (internal quotation marks omitted).  The complaint need not include "a high degree of factual specificity" but "must contain more than a rote recital of the elements of a cause of action."  Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotation marks omitted).

---

[2] The same standard was used on preliminary review under 28 U.S.C. § 1915A, which allowed service of Beaulieu's thirteen claims.  Preliminary review, however, is done sua sponte, and for that reason does not preclude defendants from moving to dismiss claims for failure to state a cognizable cause of action and to raise defenses.  See, e.g., Udoh v. Ferguson, 2018 WL 623664, at *6 (D.N.J. Jan. 30, 2018); Pona v. Weeden, 2017 WL 3279012, at *3, n.7 (D.R.I. June 29, 2017); Owusu v. Bank of Am., N.A., 2016 WL 4742487, at *2, n.4 (W.D. Wash. Aug. 9, 2016).

A.  Background

Beaulieu is a transsexual inmate who has been incarcerated at the New Hampshire State Prison for Men since January 6, 2011. Although born a male, she identifies as female, which is reflected in her clothing, makeup, and hair style.  She began hormone treatment in October of 2015.

Because of her transsexual status, Beaulieu alleges that she is particularly at risk in the prison environment.  She also alleges that she has mental health issues and that the prison staff is aware of those issues.  Beaulieu's allegations reflect her tumultuous history at the prison, including allegations of sexual assaults and disciplinary measures imposed on multiple occasions.

On preliminary review, the magistrate judge ordered service of the following claims:

> 1. Warden Zenk violated Beaulieu's Fourteenth Amendment right to equal protection by denying her access to female items and to more frequent opportunities to shave at SHU.
>
> 2. SHU Sgt. Stefan Czak and Corrections Officer ("CO") Eric Turner violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, by housing Beaulieu with inmate Shawn Cook in March 2015, knowing that Beaulieu was at particular risk of sexual victimization and that Cook had a history of sexual assault.
>
> 3. Defendants Capt. Michael Edmark and Lt. Scott Marshall, knowing that Beaulieu suffers from mental health problems, violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence by housing Beaulieu in a cell below inmate Cook on May 20, 2015, while

the investigation of Beaulieu's sexual assault claim against Cook was ongoing, and knowingly allowing Cook to harass and threaten Beaulieu, thus creating a substantial risk to Beaulieu's mental health.

4. An unnamed NHSP corrections officer, identified in the R&R as John Doe #1, on May 27, 2016, violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, by putting Beaulieu in a cell with an inmate who the officer knew or should have known was a member of a gang with which Beaulieu had prior difficulties, thus placing Beaulieu at a substantial risk of serious harm.

5. CO Christopher Brownlie, CO Young, and CO Dominic Salce violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, by placing Beaulieu at a substantial risk of serious harm from other inmates, in that:
    a. CO Christopher Brownlie told another inmate that Beaulieu was a "rat";
    b. CO Young told inmates that Beaulieu was a "rat" and a "skinner," and
    c. CO Dominic Salce yelled, where all of the inmates on Beaulieu's tier could hear him, that Beaulieu had requested statement forms, which Salce knew would cause other inmates to think Beaulieu is a "rat."

6. Warden Zenk, Maj. Jon Fouts, Capt. Boynton, Lt. Paul Carroll, Sgt. Gary Lydick, Sgt. Jeremiah Totten, Cpl. Stone, and Cpl. Pat Wright, knowing that Beaulieu suffers from mental health problems, violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, by allowing Brownlie to work in proximity to, and interact with, Beaulieu during the investigation of Beaulieu's sexual assault accusation against Brownlie, and allowing Brownlie to harass Beaulieu, thus creating a substantial risk of serious harm to Beaulieu's mental health.

7. Sgt. Lydick, Lt. Carroll, and Capt. Edmark violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, in that, knowing that CO David Dionne had previously used excessive force on Beaulieu and harassed Beaulieu, and knowing that Beaulieu suffers from mental health problems, those defendants allowed Dionne after July 28, 2016, to continue to work in proximity to

Beaulieu, thus creating a substantial risk of serious harm to Beaulieu's mental health.

8. On July 6, 2017, Sgt. Totten, CO Jason Caruso and Lt. Marshall violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, by denying Beaulieu's request to see a mental health worker when Beaulieu told the officers she was actively suicidal and instead told Beaulieu to "just kill [her]self," and by laughing at and provoking Beaulieu, thus creating a substantial risk of serious harm to Beaulieu's mental health.

9. In retaliation for Beaulieu's First Amendment activities including her filing of a complaint against CO Brownlie, accusing that officer of sexually assaulting her, as well as Beaulieu's oral and written grievances, and lawsuits filed against other DOC staff members:
a. An unnamed officer, identified in the R&R as John Doe #2, charged Beaulieu with a disciplinary violation for disrespecting CO Chandonnet, when Beaulieu objected to Chandonnet's actions that Beaulieu considered to be sexual assault;
b. Sgt. Pelletier, CO John Aulis, Lt. Andrew Newcomb, and CO Timothy Miller, Capt. Masse, Cpl. Paz, and CO Lamontagne, charged Beaulieu with multiple disciplinary infractions;
c. Unnamed officers, identified in the R&R as the "Keep Away John Does," instituted a "Keep Away" directive preventing Beaulieu and her boyrfriend, Steven Newcombe, from having any type of contact with one another.
d. On May 11, 2017, Sgt. Lydick inflicted unnecessary force on Beaulieu, causing her severe pain;
e. Cpl. Wright told Beaulieu to kill herself;
f. CO Young told other inmates that Beaulieu is a "rat" and a "skinner"; and
g. On July 6, 2017, Beaulieu was subjected to unprovoked excessive force, tazed, kicked, and placed in a restraint chair by Sgt. Totten, CO Caruso, Lt. Carroll, Capt. Edmark, and Lydick.

10. On an unspecified date in 2016, CO G. Nimorowski, while escorting Beaulieu between areas of the prison while Beaulieu was handcuffed, violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that Nimorwski,

without provocation, pulled and twisted Beaulieu's arm, and then, when Beaulieu told Nimorowski that he was hurting her, Nimorowski forcefully pushed her handcuffs toward her elbows, causing her pain;

11. On December 5, 2016, Sgt. Totten, while escorting Beaulieu between areas of the prison, after Beaulieu said she refused to live on a particular tier in SHU and then stated that she was suicidal, violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that:
    a. Sgt. Totten slammed Beaulieu's head against the window, and held her against the window by her arms; and
    b. After Beaulieu had smashed her own head against the window, Sgt. Totten slammed Beaulieu against a doorframe and then slammed her face into the floor,
    while Beaulieu was not resisting Totten's attempts to restrain her.

12. Shortly after May 11, 2017, in response to Beaulieu's accusation of sexual assault against CO Brownlie, Sgt. Lydick and other unnamed officers, identified by the court in the Report and Recommendation issued this date as "May 11 John Does," violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that, without provocation:
    a. Lydick forced Beaulieu to the ground while she was in handcuffs, without allowing her the opportunity to get down voluntarily; and
    b. The officers present then got "on" Beaulieu while she was on the floor in handcuffs, causing her severe pain.

13. On May 27, 2017, in response to Beaulieu smashing her cup, which she did because she was suicidal and had been refused mental health care, CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that:
    a. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick forcibly pulled Beaulieu's arms through the tray slot in her door and handcuffed her, and put her on the floor in the SHU rotunda;
    b. Lydick shot Beaulieu with a Tazer;

c. Edmark kicked Beaulieu in the face while she was on
        the floor;
        d. after Beaulieu got up, Caruso and Young pulled her
        arms while she was handcuffed, then dropped her to the
        ground on her shoulder;
        e. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and
        Sgt. Lydick fell on top of her after Caruso and Young
        dropped her on the ground; and
        f. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and
        Sgt. Lydick then placed Beaulieu in a restraint chair
        for four hours.

Report and Recommendation, Doc. No. 16 (Nov. 30, 2017),

approved, Order, Doc. no. 21 (Jan. 2, 2018).

        The defendants filed a motion to dismiss the claims and to

stay discovery and postpone the preliminary pretrial conference.

Beaulieu was given additional time to respond to the defendants'

motions.


B.  Failure to State a Cause of Action

        The claims allowed on preliminary review, as quoted above,

are the operative claims in the case.  The defendants contend

that Beaulieu failed to state cognizable causes of action under

42 U.S.C. § 1983 in Claims 1 through 8 and Claims 10 through 13.


    1.  Equal Protection

    In Claim 1, Beaulieu alleged that she was being treated

differently than females in the custody of the New Hampshire

Department of Corrections ("DOC") because she was not allowed to

have female items, such as make up and hair dryers, that are

available to female inmates at the women's prison.[3]  She also alleged that when she was housed in the Special Housing Unit ("SHU") at the prison she, along with all other inmates in SHU, was only allowed to shave once each month.  She alleged that the resulting facial hair caused her distress and that Warden Zenk's refusal to change the shaving policy for her violated her right to equal protection.

The defendants move to dismiss the equal protection claim on the grounds that Beaulieu did not identify other inmates with whom she is similarly situated who have been allowed access to female items and have been allowed to have a different shaving policy while in SHU.  They contend that because Beaulieu is housed at the New Hampshire State Prison for Men, not the New Hampshire State Prison for Women, she is not similarly situated to female inmates.  They further contend that she did not allege facts to show that she was treated differently than other inmates at the men's prison.

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall not "deny to any person . . . the equal protection of the laws."  U.S. Const. Amend. XIV.  "To establish an equal protection claim, a plaintiff needs to allege

_____

[3] During subsequent proceedings that involved a hearing before the magistrate judge, prison officials have represented that Beaulieu now has access to female items that she has requested.

facts showing that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith." Davis v. Coakley, 802 F.3d 128, 132 (1st Cir. 2015) (internal quotation marks omitted). When a plaintiff is not a member of a suspect class, she may bring a "class of one" claim by alleging facts to show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

a. Access to Female Items

Beaulieu's claim is that she is similarly situated to female inmates who are incarcerated at the women's prison. Her theory, however, ignores the realities of her gender and the circumstances of housing. Beaulieu is a transsexual inmate who identifies as female but is incarcerated at the men's prison. Beaulieu does not claim that she is improperly incarcerated at the men's prison or that she should be moved to the women's prison. Female inmates, who have access to the female items Beaulieu identifies, are incarcerated at the women's prison.

As the defendants point out, inmates housed in different facilities are not necessarily similarly situated for purposes of a claim alleging different treatment. See, e.g., Klinger v. Dep't of Corrs., 31 F.3d 727, 733 (8th Cir. 1994); Valerio v. Wrenn, 2017 WL 5956668, at *9 (D.N.H. Oct. 23, 2017); Stayrook v. Masse, 2012 WL 1900117, at *3-*4 (D.N.H. May 2, 2012); see also Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 468 (1981) (recognizing that "gender classification [may not be] invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances"). Because of the differences in gender and housing, Beaulieu's allegations do not show that she is similarly situated to female inmates at the women's prison. She also did not alleged that she was treated differently than other inmates at the men's prison. Therefore, she did not allege a claim for violation of equal protection based on the lack of access to female items.

b. Shaving Policy

Beaulieu also alleged that the warden's failure to change the shaving policy in SHU to allow her to shave more often is a violation of equal protection. Beaulieu did not allege that the policy is different for others in SHU or that she was singled

out for any reason.  Therefore, Beaulieu did not allege an equal protection claim based on the SHU shaving policy.

Because Beaulieu has not alleged facts to show that she was treated differently than others who were similarly situated, Claim 1 is dismissed.

## 2.  Endangerment in Violation of the Eighth Amendment

The defendants move to dismiss the parts of Claims 2 through 8 that allege violation of the Eighth Amendment.[4]  They construe those claims to allege that various defendants violated the Eighth Amendment by endangering Beaulieu, that is, by being deliberately indifferent to a substantial risk of serious harm to Beaulieu.  The defendants contend that Beaulieu's allegations are insufficient because they do not show either a substantial risk of serious harm or that the defendants were deliberately indifferent to such a risk.

The Eighth Amendment protects inmates from cruel and unusual punishment.  U.S. Const. Amend. VIII.  As part of the Eighth Amendment protection, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates," including a duty "to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S.

---

[4] The claims allege both Eighth Amendment violations and negligence under state law.

825, 832-33 (1994).  A prison official violates the Eighth Amendment when "a substantial risk of serious harm" exists and the official is deliberately indifferent to the inmate's health or safety.  Id. at 834.

"A 'substantial risk' is one that is 'objectively intolerable.'"  Jones v. Higgins-O'Bien, 2018 WL 935421, at *5 (D. Mass. Feb. 16, 2018) (quoting Farmer, 511 U.S. at 846).  A substantial risk exists if "there was a strong likelihood that violence would occur."  Purvis v. Ponte, 929 F.2d 822, 825 (1st Cir. 1991).  In the First Circuit, however, it is not necessary for the substantial risk to culminate in violence to show an Eighth Amendment violation.  Id. ("[A] prisoner need not wait to be assaulted to obtain relief for the infringement of this right."); but cf. Jones v. Butler, 663 Fed. Appx. 468, 470 (7th Cir. 2016) ("[I]t is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment.").

     Harm, for purposes of the Eighth Amendment, must be extreme when taken in the context of a prison.  Skinner v. Cunningham, 430 F.3d 483, 489 (1st Cir. 2005).  "To establish fear of constitutional dimensions, an inmate must show more than simple anxiety."  Purvis, 929 F.2d at 825 (internal quotation marks omitted).  Similarly, discomfort is not sufficient to support an Eighth Amendment violation.  Id.

15

a. Claim 2

On preliminary review, Claim 2 was interpreted to allege that the defendants knew that Beaulieu was at particular risk of victimization and knew that a cellmate, Shawn Cook, had a history of sexual assault. The defendants contend that Beaulieu alleged that Cook had a history of making false allegations of sexual assault, not committing sexual assault.

In Beaulieu's handwritten complaint, "Allegation 2" is titled "Failure to protect – sexual assault." Beaulieu alleged that Cook was known for stealing from his cellmates and for "calling preas" and "putting preas on people."[5] Beaulieu alleged that she had an altercation with Cook about a note from another inmate and alleged that Cook pressured her into having sex, opened Beaulieu's grievance about that sexual assault, and accused Beaulieu of raping him. Beaulieu also alleged that even after she was moved out of Cook's cell, Cook continued to harass and threaten Beaulieu to force her to drop her claims against

---

[5] Beaulieu uses the acronym PREA, referring to the Prison Rape Elimination Act, to mean complaints or reports of rape or sexual assault. See, e.g., Battista v. Clarke, 645 F.3d 449, 455 (1st Cir. 2011) (referring to sexual assaults as "PREA incidents"); Cox v. Mass. Dep't of Corrs., 2018 WL 1586019, at *2 (D. Mass. Mar. 31, 2018) (telephone used for reporting sexual assault called "PREA hotline"); Jones v. Higgins-O'Brien, 2018 WL 935421, at *2 (D. Mass. Feb. 16, 2018) (referring to a sexual assault as "a PREA incident.")

him.  Beaulieu alleged that she succumbed to the pressure and dropped the charges of sexual assault.

As the defendants contend, the complaint lacks an allegation that Cook had a history of sexual assault and that prison officials knew of that history.  Instead, Beaulieu alleged that prison officials knew that Cook had a history of "calling preas" and "putting preas on people," which means accusing others of sexual assault.  As such, Beaulieu did not allege facts to show that the defendants were deliberately indifferent to a substantial risk that Cook would sexually assault Beaulieu.

The claim alleging violation of the Eighth Amendment in Claim 2 is dismissed.

### b.  Claim 3

In Claim 3, Beaulieu alleged that Capt. Edmark and Lt. Marshall violated the Eighth Amendment by housing Beaulieu in the cell below Cook, while Beaulieu's sexual assault charge against Cook was pending.  Beaulieu alleged that Edmark and Marshall knew that Beaulieu suffered from mental health problems and allowed Cook to verbally harass and threaten Beaulieu, which posed a risk to her mental health.  She further alleged that she dropped the sexual assault charge against Cook because of the harassment and threats.

The defendants move to dismiss the claim on the grounds that Beaulieu did not allege what, specifically, Cook said to harass and threaten her.  The defendants contend that the lack of specificity in the allegations should be interpreted to mean that that their actions were not sufficiently serious to violate the Eighth Amendment.  They also contend that Beaulieu failed to allege facts to show that the defendants knew about the harassment and threats.

In the context of a motion to dismiss, all inferences are taken in the plaintiff's favor, not in the defendants' favor. Beaulieu alleged that the harassment and threats were sufficiently serious to cause her to drop her sexual assault charge against Cook.  Given the living situation, with Cook in a cell above Beaulieu, a reasonable inference, for purposes of a motion to dismiss, can be drawn that guards could also hear Cook's communication with Beaulieu.  Therefore, the claim survives the defendants' challenges for lack of specificity, and the evidentiary basis for the claim may be tested through a motion for summary judgment.

        c.  <u>Claim 4</u>

Beaulieu alleged in Claim 4 that an unidentified officer violated the Eighth Amendment by putting Beaulieu in a cell with a gang member when the officer knew or should have known that

Beaulieu had had prior problems with the gang.  She alleged that before being housed with the gang member, she told Sergeant Robert Parent that she was in fear for her safety because of the prison gang known as the Brotherhood of White Warriors ("BOWW"). She also alleged that the inmate who was housed in her cell had tattoos that showed he was a member of BOWW.  Beaulieu further alleged that the cellmate used threats of gang violence to sexually assault her.

The defendants contend that the claim fails because Beaulieu did not allege facts to show what the officer knew about Beaulieu's prior problems with BOWW or circumstances that would put the officer on notice that Beaulieu would be sexually assaulted.  They also assert that Beaulieu's allegation of sexual assault by the cellmate is a bare legal conclusion that cannot be credited for purposes of a motion to dismiss.

Housing an inmate with or in proximity to gang members when prison officials know that to be a problem may state an Eighth Amendment violation.  See King v. Dep't of Corrs., 2016 WL 7175592, at *6 (D. Mass. Dec. 8, 2016); Doiron v. Edmark, 2016 WL 7353908, at *5 (D.N.H. Oct. 26, 2016), report and recommendation adopted, 2016 WL 7335598 (D.N.H. Dec. 16, 2016). In light of the standard for a motion to dismiss, Beaulieu alleged enough to state the claim, and proof of deliberate

indifference to a substantial risk of serious harm may be tested in a motion for summary judgment.

### d. Claim 5

In Claim 5(a), (b), and (c), Beaulieu alleged that three prison officers told other inmates that Beaulieu was a "rat", a "skinner", and had requested statement forms. Beaulieu contended that the officers' conduct, caused Beaulieu to be subjected to "serious harassment" and put her safety at risk. The defendants move to dismiss all three parts of Claim 5 to the extent they allege Eighth Amendment violations.

### i. Claim 5(a)

In Claim 5(a), Beaulieu alleged that while Officer Brownlie was giving another inmate his medications, that inmate asked the officer to open his cell door and Beaulieu's cell door. Brownlie answered that he would not do that because Beaulieu would "rat" on him. The defendants contend that Brownlie's remark at most suggested that Beaulieu would "rat" or inform on the officer, not on other inmates.

As is noted above, prisoners have an Eighth Amendment right to personal safety. Farmer, 511 U.S. at 833. To state an Eighth Amendment endangerment claim, however, a prisoner must allege facts that show the officer was deliberately indifferent to a substantial risk of serious harm. Id. at 834. Beaulieu's

20

allegation that Brownlie identified him as someone who would rat on prison officers, rather than on other inmates, does not state a substantial risk of serious harm from another inmate. See Ford v. Kennerly, 2016 WL 3049311, at *20 (W.D. Mich. May 31, 2016).

Therefore, the Eighth Amendment part of Claim 5(a) is dismissed.

### ii. Claim 5(b)

In Claim 5(b), Beaulieu alleged that Officer Young told other inmates that she was a "rat" and a "skinner".[6] The defendants contend that the claim is insufficient because it lacks detail about what Young did and what happened as a result.

A reasonable inference may be drawn that prison officers who refer to an inmate as a "rat" are aware of the potential for serious harm to that inmate. See, e.g., Carpenito v. Wrenn, 2009 WL 1798149, at *9 (D.N.H. June 24, 2009). Similarly, prison officers who label an inmate a "skinner" to other inmates "are aware of the effect that will have on the remainder of the inmate population." Proverb v. O'Mara, 2009 WL 368617, at *14 (D.N.H. Feb. 13, 2009). Verbal abuse by a prison officer, which

---

[6] "Skinner" is a derogatory prison term for a sex offender, particularly for crimes involving children. Proverb v. O'Mara 2009 WL 368617, at *7, n.6 (D.N.H. Feb. 13, 2009); Scott v. Cote, 2006 WL 1030119, at *2 (D. Me. Apr. 18, 2006).

is known to incite other inmates, states a claim of endangerment under the Eighth Amendment.  Id.

Proof of the claim, including any resulting harm, may be tested on summary judgment.

### iii.  Claim 5(c)

Beaulieu alleged that Officer Salce yelled on Beaulieu's tier, so as to be heard by all the inmates on the tier, that Beaulieu had requested statement forms.  She further alleged that as a result she was subjected to serious harassment by other inmates and that Salce laughed about the harassment.  The defendants contend that the claim is insufficient because Beaulieu does not describe the serious harassment or allege that Salce knew that he would cause other inmates to think that Beaulieu was an informant.

Resolving inferences in Beaulieu's favor, Salce's broadcast to other inmates that Beaulieu had requested statement forms was understood to mean that Beaulieu was informing on other inmates. See Burrell v. Hampshire County, 307 F.3d 1, 9 (1st Cir. 2002) (describing situation in Giroux v. Somerset Cty., 178 F.3d 28, 29-30 (1st Cir. 1999)), as endangerment where jail officials appeared to realize that their actions "would tar Giroux as an informant and thereby increase the risk to him"); Benefield v. McDowall, 241 F.3d 1267, 1272 (10th Cir. 2001) ("labeling an

inmate a snitch satisfies the Farmer standard"); Peters v. Azzara, 2017 WL 4118388, at *5 (D.N.H. Aug. 4, 2017) (labeling an inmate a gang informant within earshot of other gang member inmates could state an Eighth Amendment claim); Flores v. Wall, 2012 WL 4471101, at *12 (D.R.I. Aug. 31, 2012) (spreading rumors that plaintiff was a snitch violates the duty to protect). Salce's response, laughter, when serious harassment resulted from his actions suggests deliberate indifference to Beaulieu's safety.

The harm Beaulieu suffered, if any, may be tested through a motion for summary judgment.

e.  Claim 6

As construed on preliminary review, Beaulieu alleged that the defendants violated the Eighth Amendment by allowing Officer Brownlie to work near Beaulieu after she had accused Brownlie of sexual assault.  In the complaint, Beaulieu alleged that she made a PREA complaint against Brownlie on May 11, 2017.  She further alleged that during the investigation of the complaint the defendants let Brownlie work near Beaulieu and let him harass and threaten her.

The defendants contend that Beaulieu alleged only that she had filed a PREA complaint but did not allege sexual assault by Brownlie.  They argue that a PREA complaint cannot be construed

23

to refer to sexual assault and that the alleged verbal harassment and discomfort are not enough to violate the Eighth Amendment. As is explained above, a reasonable inference is that Beaulieu uses "PREA" to mean an accusation of sexual assault, and Beaulieu's allegations are properly construed to mean that she filed a sexual assault complaint against Brownlie.

Claim 6, however, did not allege that the defendants failed to protect Beaulieu from sexual assault. Instead, Beaulieu alleged that the defendants failed to protect her from Brownlie after the alleged assault when they let Brownlie work near Beaulieu. Brownlie's proximity allegedly allowed him to threaten and verbally harass Beaulieu. Beaulieu does not allege that any further assault or other harm occurred.

It is well settled that verbal harassment and threats ordinarily do not rise to the level of serious harm within the meaning of the Eighth Amendment, and Beaulieu has not alleged circumstances to show a likelihood of serious harm.

Therefore, the Eighth Amendment part of Claim 6 is dismissed.

f. Claim 7

Claim 7 is similar to Claim 6. As construed on preliminary review, Beaulieu alleged that the defendants failed to protect her from Officer Dionne after Dionne allegedly used excessive

force on her.[7]  Beaulieu alleged that Dionne verbally harassed her by saying "excessive force excessive force" when he walked by Beaulieu.  As such, Beaulieu does not allege a likelihood of serious harm to support the Eighth Amendment claim.

g.  <u>Claim 8</u>

Beaulieu alleged that four of the defendant officers failed to protect her from a serious risk to her mental health when she claimed to be suicidal and the officers refused her request to see a mental health worker.  Beaulieu also alleged that they laughed at her and provoked her, which created a substantial risk of serious harm to her mental health.  She provided no allegations about what, if any, harm resulted from the provocation or the lack of mental health care.

The allegations do not state an Eighth Amendment violation. Therefore, that part of Claim 8 is dismissed.

h.  <u>Summary</u>

Claim 1 is dismissed, and the Eighth Amendment parts of Claims 2, 5(a), 6, 7, and 8 are dismissed.  The Eighth Amendment parts of Claims 3, 4, 5(b), and 5(c) survive the motion to dismiss.

---

[7] The defendants address the claim primarily as challenging the use of excessive force by Dionne.  That is not the claim that was allowed on preliminary review.

3.  Excessive Force in Violation of the Eighth Amendment

In Claims 10 through 13, Beaulieu alleges that prison officers subjected her to excessive force in violation of the Eighth Amendment.  A use of force violates the Eighth Amendment when an officer subjects an inmate to "unnecessary and wanton infliction of pain . . . [w]hich constitutes cruel and unusual punishment." Hudson v. McMillan, 503 U.S. 1, 5 (1992).  The test used is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 6.

Significant injury is not a threshold requirement because it is the need for the use of force that determines whether an Eighth Amendment violation has occurred. Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010).  On the other hand, the Eighth Amendment is not violated by "'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Id. at 38 (quoting Hudson, 503 U.S. at 9-10).  The extent of an inmate's injuries may be relevant to determine the amount of force used and whether force was necessary. Id. at 37.

a.  Claim 10

Beaulieu alleged that Officer Nimorowski, without provocation, pulled and twisted Beaulieu's handcuffed arms while

26

Nimorowski was escorting Beaulieu from the law library to her cell. She further alleged that when she told Nimorowski that he was hurting her, Nimorowski forcefully pushed the handcuffs up toward her elbows, which caused more pain. The defendants move to dismiss on the ground that Beaulieu alleged no more than de minimis harm, because "the claim admits of no discernible injury," so that the use of force was not sufficient to invoke Eighth Amendment protection.

As alleged by Beaulieu, Nimorowki's actions were more than a de minimis use of force. Therefore, the defendants have not provided grounds to dismiss Claim 10.

### b. Claim 11

In Claim 11, Beaulieu alleged that Sergeant Totten used excessive force while escorting her to I tier. Beaulieu alleged that she told Totten that she was in fear for her safety on I tier. When they got to the door, Beaulieu said that she "was suicidal again." She alleged that Totten slammed her against the door frame and that Beaulieu intentionally hit her own head on the window because Totten was not listening to her claims of being suicidal. Totten then took Beaulieu to the floor by sweeping her legs out from under her. Beaulieu offers alternatives that Totten could have used instead of restraining her on the floor.

The defendants contend that the circumstances alleged do not show that force was used for the purpose of causing harm but instead to restore discipline. They also argue that the force used did not violate the Eighth Amendment because it caused "no discernible injuries." Of course, the extent of Beaulieu's injury, if any, is not apparent from the complaint.

Contrary to the defendants' theory, force may be excessive and violate the Eighth Amendment even if it causes no significant injuries. The situation as alleged by Beaulieu was that she was out of control and threatening suicide. For that reason, some use of force was necessary to restore discipline. Whether the force used was necessary or excessive cannot be determined based on the motion to dismiss.

    c.  Claim 12

Beaulieu alleged that she was subjected to excessive force by Sergeant Lydick and other officers in response to her complaint of sexual assault against Officer Brownlie. Beaulieu alleged that when she continued to state her complaint against Browlie, Lydick called her a liar and told her to get to her knees. When Beaulieu did not obey, Lydick then "dropped" her to the floor; all of the officers "were on [her]", and they "held a tazor or something on [her]."

The defendants interpret Beaulieu's allegations to show that she did not follow Lydick's orders, which resulted in being taken to the floor as an appropriate and measured disciplinary response. The necessary inferences for that interpretation favor the defendants, however, while for purposes of a motion to dismiss, inferences must be taken in favor of Beaulieu.

In addition, the defendants argue that Beaulieu suffered no "discernible injury" so that no Eighth Amendment violation occurred. The nature and extent of Beaulieu's injury, if any, cannot be determined based on a motion to dismiss. Therefore, the defendants have not shown that Beaulieu failed to state a claim.

> d. <u>Claim 13</u>

Beaulieu alleged that after becoming annoyed by Sergeant Totten she was feeling suicidal and asked for mental health care. She became more upset because the officers did not provide access to mental health care and instead told her to just kill herself. She alleged that the officers provoked her, and she started to bang on the windows and then smashed a cup. Officers came in, put Beaulieu in handcuffs, and took her to the floor.

She alleged, "upon information and belief," that Sergeant Lydick shot her with a taser. She alleged that another officer

kicked her in the face before she was brought back up to her feet and that she was then dropped on the floor, which injured her shoulder. She was put in a restraining chair for four hours following the incident.

The defendants move to dismiss the claim because the term "provoke" is a "naked assertion." They contend that the allegations do not show deliberate indifference to a substantial risk of serious harm, but the claim is excessive force, not failure to protect. The defendants also contend that the allegations show that force was used to gain control of Beaulieu and to prevent her from harming herself. The allegations are sufficient to raise an issue as to whether excessive force was used during the incident.

4. Relief Requested to Remove Defendants from Their Jobs

Beaulieu requests both money damages and an order requiring that the correctional officer defendants be removed from their jobs. The defendants move to dismiss the request to remove defendants from their jobs on the ground that the New Hampshire Department of Corrections and other unnamed state entities are the only actors that can "effectuate such relief." The defendants contend that the requested relief is unavailable because those entities are not parties and would be protected by sovereign immunity if they were parties.

In support, the defendants rely on Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009).  The court held in Poirier that "[s]tates and their agencies are entitled to sovereign immunity 'regardless of the relief sought.'"  558 F.3d at 97 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).  The court further explained, however, that "[a] plaintiff may seek prospective injunctive relief against a state official."  Id. at 97, n.6.

Here, although the Department of Corrections and other entities are not defendants, prison officials, including the warden, are parties.  In the context of the motion to dismiss, the defendants have not and could not provide evidence to show that the warden, or other defendants, would be unable to effectuate the relief Beaulieu requests.  Therefore, the viability of prospective injunctive relief can be tested in the context of summary judgment.

B.  Defenses

The defendants move to dismiss Beaulieu's claims based on defenses of Eleventh Amendment immunity, state law official immunity, and the bar to damages for mental or emotional injury imposed by 42 U.S.C. § 1997e(e).

1.  <u>Eleventh Amendment Immunity</u>

The defendants seek dismissal of any claims in which
Beaulieu seeks money damages against the defendants in their
official capacities as officials of the New Hampshire Department
of Corrections.  It is well settled that sovereign immunity
provided by the Eleventh Amendment prevents a plaintiff from
suing government officials in their official capacities for
money damages under 42 U.S.C. § 1983.  It does not appear that
Beaulieu brings claims seeking money damages against defendants
in their official capacities.

To clarify the claims, however, all claims seeking money
damages are deemed to be brought against the defendants in their
individual capacities only.

2.  <u>State Law Official Immunity – RSA 99-D:1</u>

As construed on preliminary review, Claims 2 through 8
allege both Eighth Amendment and state law negligence claims.
The defendants contend that they are protected by official
immunity, pursuant to RSA 99-D:1, from liability for Beaulieu's
negligence claims.

Under RSA 99-D:1, officers are immune from liability "for
decisions, acts or omissions that are:  (1) made within the
scope of their official duties while in the course of their
employment; (2) discretionary, rather than ministerial; and (3)

not made in a wanton or reckless manner." Farrelly v. City of Concord, 168 N.H. 430, 440 (2015). In support, the defendants assert generally that because the claims were construed on preliminary review to allege negligence, Beaulieu does not allege wanton or reckless conduct that would remove the claims from the protection of official immunity.

The negligence claims were alleged in conjunction with Eighth Amendment endangerment claims that require deliberate indifference to a substantial risk of serious harm. Deliberate indifference to a prisoner's substantial risk of serious harm may also constitute wanton or reckless conduct. Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006); accord Zingg v. Grobiewski, 2017 WL 4364179, at *4 (D. Mass. Sept. 29, 2017). Therefore, the defendants have not shown that all of the negligence claims are necessarily barred by official immunity.[8]

3. <u>Claims for Mental or Emotional Injury - § 1997e(e)</u>

"No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual

---

[8] In the absence of a more particularized effort by the defendants to address the effect of deliberate indifference in the context of each negligence claim, the court will not undertake that analysis on the defendants' behalf.

act."  42 U.S.C. § 1997e(e).  Based on the bar imposed by
§ 1997e(e), the defendants move to dismiss the Eighth Amendment
parts of Claims 2, 4, 5, 6, 7, and 8 and to dismiss Claims 9,
10, 11, 12, and 13.  Because the Eighth Amendment parts of
Claims 2, 5(a), 6, 7, and 8 are dismissed on the merits, it is
not necessary to consider the application of § 1997e(e) to those
claims.

The defendants argue that because Beaulieu did not allege
physical harm or a sexual act in Claims 4, 5(b), and 5(c), those
claims are barred by § 1997e(e) to the extent they seek damages
for mental or emotional injury.  They contend that the injuries
alleged in the retaliation claim, Claim 9, also are not physical
and do not involve a sexual act.  With respect to the excessive
force claims, Claims 10, 11, and 12, the defendants argue that
the pain and injury that Beaulieu alleges is merely de minimis
and therefore no more than emotional harm.

In each of the cited claims, Beaulieu alleged violations of
a constitutional right:  the Eighth Amendment right not to be
subjected to a substantial risk of serious harm in Claims 4,
5(b), and 5(c);, the Eighth Amendment right not to be subjected
to excessive force in Claims 10, 11, and 12; and the First
Amendment right not to be retaliated against for making
complaints about prison officers' conduct in Claim 9.  The First
Circuit has not decided whether recovery on claims for

34

violations of constitutional rights, without physical injury or a sexual act, are barred by § 1997e(e), and the district courts have come to different conclusions.  See, e.g. Cox v. Mass. Dep't of Corr., No. CV 13-10379-FDS, 2018 WL 1586019, at *17-18 (D. Mass. Mar. 31, 2018) (citing and discussing cases and following the District of Columbia Circuit to find that a violation of the Americans with Disabilities Act, like a constitutional violation, is an injury outside the § 1997e(e) bar); Schoff v. Fitzpatrick, 2018 WL 1185499, at *9 (D. Me. Mar. 7, 2018) (following Mattei v. Dunbar, 217 F. Supp. 3d 367, 380 (D. Mass. 2016), which held that a plaintiff cannot recover compensatory monetary damages for mental or emotional distress due to a constitutional violation but might recover nominal and punitive damages).

Many courts hold that § 1997e(e) bars recovery for mental or emotional injury, including injury due to constitutional violations.  See Wagner v. Tex. Dep't of Criminal Justice, 2018 WL 2074142, at *6 (N.D. Tex. May 3, 2018) (discussing Fifth Circuit precedent); Santana v. New York, 2018 WL 1633563, at *6 (S.D.N.Y. Mar. 29, 2018) (discussing Second Circuit precedent as to constitutional violations but excepting the claim for due process violations from the § 1997e(e) bar); Hammonds v. Jones, 2018 WL 1528803, at *3 (M.D. Ala. Mar. 5, 2018) (following Eleventh Circuit precedent).  Other courts construe § 1997e(e)

35

as a limit on the remedy available for a constitutional
violation, allowing recovery of nominal and punitive damages for
constitutional violations, but not compensatory damages.  See,
e.g., Gray v. Hardy, 826 F.3d 1000, 1007 (7th Cir. 2016);
Searles v. Van Bebber, 251 F.3d 869, 878-79 (10th Cir. 2001);
Davis v. Eberling, 2018 WL 1771625, at *2 (M.D. Pa Apr. 11,
2018) (following Third Circuit precedent); Reynolds v. Beasley,
2018 WL 1462106, at *4 (S.D. Miss. Mar. 23, 2018) (following
Fifth Circuit precedent); Mattei, 217 F. Supp. 3d at 380
(discussing cases).  Still other courts construe constitutional
and statutory violations as inflicting different injuries from
the mental or emotional injury barred by § 1997e(e).  See Aref
v. Lynch, 833 F.3d 242, 262-63 (D.C. Cir. 2016) (citing and
discussing cases); Cox, 2018 WL 1586019, at *17-*18; Burley v.
Abdellatif, 2018 WL 1384235, at *2 (E.D. Mich. Mar. 29, 2018)
(noting difference between claims barred by § 1997e(e) and
constitutional violations and stating the Sixth Circuit has not
decided the issue).

      The more persuasive interpretations of § 1997e(e) do not
preclude claims for constitutional violations that allege only
emotional injury, but instead allow the claims with at least
nominal and punitive damages.  Further, Beaulieu alleges
sufficient injury in the excessive force claims to avoid

§ 1997e(e).[9]  Therefore, the challenged claims are not dismissed based on § 1997e(e) but the recovery may be limited.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 25) is granted as to Claim 1 and the Eighth Amendment parts of Claims 2, 5(a), 6, 7, and 8.  The motion is otherwise denied.

The claims remaining in the case are both parts of Claims 3, 4, 5(b), and 5(c); the negligence parts of Claims 2, 5(a), 6, 7, and 8; and Claims 9 through 13.

The defendants' motion to stay discovery and submission of a discovery plan and to postpone a pretrial conference until the motion to dismiss is resolved (document no. 26) is terminated as moot.

SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

June 28, 2018
cc:   Christopher Beaulieu, pro se
      Anthony Galdieri, Esq.
      Laura E. B. Lombardi, Esq.

---

[9] The defendants argue that the injuries that Beaulieu alleges were de minimis and, therefore, do not provide sufficient physical injury to avoid § 1997e(e).  See, e.g., Young v. Dep't of Corrs., 2017 WL 3034251, at *2 (D. Me. July 17, 2017) (citing cases).  Whether or not Beaulieu suffered more than de minimis injury cannot be determined at this stage.