```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Christopher Beaulieu
a/k/a Crystal Beaulieu

    v.                                    Civil No. 16-cv-471-JD
                                              Opinion No. 2018 DNH 221

New Hampshire Governor, et al.

## O R D E R

Crystal Beaulieu, who is proceeding pro se and in forma pauperis, brings claims against officers at the New Hampshire Prison for Men, arising from incidents that occurred during her incarceration.[1] The defendants move for judgment on the pleadings. Beaulieu did not file a response to the motion.

## Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is addressed under the standard for a motion to dismiss under Rule 12(b)(6). Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012). The court takes the plaintiff's factual allegations as true and draws reasonable inferences in the plaintiff's favor. Buntin v. City of Boston, 813 F.3d 401, 404 (1st Cir. 2015). Taken in that light, the complaint must

---

[1] Beaulieu is a transsexual female who uses the name "Crystal," and prefers to be referred to with female pronouns.

provide facts to support a claim that "is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Background

As explained in the court's order on the defendants' motion to dismiss and motions for injunction relief, Beaulieu is a transsexual inmate who has been incarcerated at the New Hampshire State Prison for Men since January 6, 2011. Although born a male, she identifies as female, which is reflected in her clothing, makeup, and hair style. She began hormone treatment in October of 2015.

Because of her transsexual status, Beaulieu alleges that she is particularly at risk in the prison environment. She also alleges that she has mental health issues and that the prison staff is aware of those issues. Beaulieu's allegations reflect her tumultuous history at the prison, including allegations of sexual assaults and disciplinary measures imposed on multiple occasions.

On preliminary review, the magistrate judge ordered service of thirteen claims. Report and Recommendation, Doc. No. 16 (Nov. 30, 2017), approved, Order, Doc. no. 21 (Jan. 2, 2018). The defendants moved to dismiss most of the claims, and Beaulieu objected. The court granted the motion in part. Doc. no. 54. The court denied Beaulieu's thirteen motions pertaining to

2

injunctive relief and other relief and denied the defendants' motion for reconsideration of the order on the motion to dismiss in a single order. Doc. no. 77. The court granted Beaulieu's motion to amend to the extent she identified previously unidentified defendants, and granted the defendants' motion to correct two of the defendants' names. Doc. no. 89.

The claims that are now remaining in the case are the following:

2. SHU Sgt. Matthew Stefanczak and Corrections Officer ("CO") Eric Turner committed the state law tort of negligence by housing Beaulieu with inmate Shawn Cook in March 2015, knowing that Beaulieu was at particular risk of sexual victimization and that Cook had a history of sexual assault.

3. Defendants Capt. Michael Edmark and Lt. Scott Marshall, knowing that Beaulieu suffers from mental health problems, violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence by housing Beaulieu in a cell below inmate Cook on May 20, 2015, while the investigation of Beaulieu's sexual assault claim against Cook was ongoing, and knowingly allowing Cook to harass and threaten Beaulieu, thus creating a substantial risk to Beaulieu's mental health.

4. An unnamed NHSP corrections officer, identified in the R&R as John Doe #1, on May 27, 2016, violated Beaulieu's Eighth Amendment rights, and committed the state law tort of negligence, by putting Beaulieu in a cell with an inmate who the officer knew or should have known was a member of a gang with which Beaulieu had prior difficulties, thus placing Beaulieu at a substantial risk of serious harm.

5(a). CO Christopher Brownlie committed the state law tort of negligence by placing Beaulieu at a substantial risk of serious harm from other inmates when he told another inmate that Beaulieu was a "rat";

5(b). CO Young violated Beaulieu's Eighth Amendment rights and committed the state law tort of negligence, by placing Beaulieu at a substantial risk of serious harm from other inmates,

3

when CO Young told inmates that Beaulieu was a "rat" and a "skinner"; and

5(c). CO Dominic Salce violated Beaulieu's Eighth Amendment rights and committed the state law tort of negligence, by placing Beaulieu at a substantial risk of serious harm from other inmates when he yelled, where all of the inmates on Beaulieu's tier could hear him, that Beaulieu had requested statement forms, which Salce knew would cause other inmates to think Beaulieu is a "rat."

6. Warden Zenk, Maj. Jon Fouts, Capt. Boynton, Lt. Paul Carroll, Sgt. Gary Lydick, Sgt. Jeremiah Totten, Cpl. Stone, and Cpl. Pat Wright, knowing that Beaulieu suffers from mental health problems, committed the state law tort of negligence, by allowing Brownlie to work in proximity to, and interact with, Beaulieu during the investigation of Beaulieu's sexual assault accusation against Brownlie, and allowing Brownlie to harass Beaulieu, thus creating a substantial risk of serious harm to Beaulieu's mental health.

7. Sgt. Lydick, Lt. Carroll, and Capt. Edmark committed the state law tort of negligence, in that, knowing that CO David Dionne had previously used excessive force on Beaulieu and harassed Beaulieu, and knowing that Beaulieu suffers from mental health problems, those defendants allowed Dionne after July 28, 2016, to continue to work in proximity to Beaulieu, thus creating a substantial risk of serious harm to Beaulieu's mental health.

8. On July 6, 2017, Sgt. Totten, CO Jason Caruso and Lt. Marshall committed the state law tort of negligence, by denying Beaulieu's request to see a mental health worker when Beaulieu told the officers she was actively suicidal and instead told Beaulieu to "just kill [her]self," and by laughing at and provoking Beaulieu, thus creating a substantial risk of serious harm to Beaulieu's mental health.

9. In retaliation for Beaulieu's First Amendment activities including her filing of a complaint against CO Brownlie, accusing that officer of sexually assaulting her, as well as Beaulieu's oral and written grievances, and lawsuits filed against other DOC staff members:
    a. CO R. Chandonnet charged Beaulieu with a disciplinary violation for disrespecting Chandonnet, when Beaulieu objected to Chandonnet's actions that Beaulieu considered to be sexual assault;

4

b. Sgt. Pelletier, CO John Aulis, Lt. Andrew Newcomb, and CO Timothy Miller, Capt. Masse, Cpl. Paz, and CO Lamontagne, charged Beaulieu with multiple disciplinary infractions;
    c. Kathleen Anderson, John Morin, and M. Rubio instituted a "Keep Away" directive preventing Beaulieu and her boyfriend, Steven Newcombe, from having any type of contact with one another.
    d. On May 11, 2017, Sgt. Lydick inflicted unnecessary force on Beaulieu, causing her severe pain;
    e. Cpl. Wright told Beaulieu to kill herself;
    f. CO Young told other inmates that Beaulieu is a "rat" and a "skinner"; and
    g. On July 6, 2017, Beaulieu was subjected to unprovoked excessive force, tazed, kicked, and placed in a restraint chair by Sgt. Totten, CO Caruso, Lt. Carroll, Capt. Edmark, and Lydick.

10. On an unspecified date in 2016, CO G. Nimorowski, while escorting Beaulieu between areas of the prison while Beaulieu was handcuffed, violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that Nimorwski, without provocation, pulled and twisted Beaulieu's arm, and then, when Beaulieu told Nimorowski that he was hurting her, Nimorowski forcefully pushed her handcuffs toward her elbows, causing her pain;

11. On December 5, 2016, Sgt. Totten, while escorting Beaulieu between areas of the prison, after Beaulieu said she refused to live on a particular tier in SHU and then stated that she was suicidal, violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that:
    a. Sgt. Totten slammed Beaulieu's head against the window, and held her against the window by her arms; and
    b. After Beaulieu had smashed her own head against the window, Sgt. Totten slammed Beaulieu against a doorframe and then slammed her face into the floor, while Beaulieu was not resisting Totten's attempts to restrain her.

12. Shortly after May 11, 2017, in response to Beaulieu's accusation of sexual assault against CO Brownlie, Sgt. Lydick, Jason Caruso, Patrick Wright, and Shawn Stone violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that, without provocation:

5

  a. Lydick forced Beaulieu to the ground while she was in handcuffs, without allowing her the opportunity to get down voluntarily; and
  b. Brownlie, Lydick, Caruso, Wright, and Stone then got "on" Beaulieu while she was on the floor in handcuffs, causing her severe pain.

13. On May 27, 2017, in response to Beaulieu smashing her cup, which she did because she was suicidal and had been refused mental health care, CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that:
  a. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick forcibly pulled Beaulieu's arms through the tray slot in her door and handcuffed her, and put her on the floor in the SHU rotunda;
  b. Lydick shot Beaulieu with a Tazer;
  c. Edmark kicked Beaulieu in the face while she was on the floor;
  d. after Beaulieu got up, Caruso and Young pulled her arms while she was handcuffed, then dropped her to the ground on her shoulder;
  e. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick fell on top of her after Caruso and Young dropped her on the ground; and
  f. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick then placed Beaulieu in a restraint chair for four hours.

## Discussion

The defendants move for judgment on the pleadings on Claims 2, 5, 6, 7, and 8. In support, they contend that 42 U.S.C. § 1997e(e) bars the negligence claims in Claims 5, 6, 7 and 8. They also contend that Claim 8 must be dismissed for failure to allege any injury, that Claims 5, 6, and 7 must be dismissed because Beaulieu has not alleged sufficient facts to make a claim for negligent infliction of emotional distress, that Claims 2 and 5(a) are barred by RSA chapter 99-D and do not

6

state actionable claims, and that Claims 2 and 5(a) should be dismissed for lack of supplemental jurisdiction.

A.  Section 1997e(e)

"No federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." § 1997e(e).  Section 1997e(e) has been construed to bar compensatory damages for mental or emotional injury in federal civil rights claims without a showing of physical injury or a sexual act.  See Rasho v. Elyea, 856 F.3d 469, 477–78 (7th Cir. 2017); Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011); Diaz v. Wall, No. CV 17-94 WES, 2018 WL 1224457, at *7 (D.R.I. Mar. 8, 2018).  For that reason, the bar imposed by § 1997e(e) will not preclude a federal civil rights claim if damages other than compensatory damages are alleged.  Kuperman, 645 F.3d at 73.

The defendants contend that § 1997e(e) bars Beaulieu's state law claims for negligence in Claims 5, 6, 7, and 8, and asks that those claims be dismissed.  Most courts that have considered the issue, have found that § 1997e(e) applies to state law claims that are brought in a federal action.  See, e.g., Wagner v. Tex. Dep't of Crim. Justice, 2018 WL 2074142, at *7 (N.D. Tex. May 3, 2018); Hernandez v. Bernstein, 2018 WL

7

2925913, at *2, n.1 (D. Or. Apr. 16, 2018 (citing conflicting cases on whether § 1997e(e) applies to state law claims); O'Connor v. Carnahan, 2015 WL 6405976, at *16 (N.D. Fla. Sept. 21, 2015), report and recommendation adopted sub nom. v. Carnahan, No. 3:09CV224-WS-EMT, 2015 WL 6182680 (N.D. Fla. Oct. 21, 2015); Schonarth v. Robinson, 2008 WL 510193, at *4 (D.N.H. Feb. 22, 2008).

In each cited negligence claim, Beaulieu alleges that a defendant or defendants caused her to be in substantial risk of harm or substantial risk of harm to her mental health. She does not allege that she suffered any actual physical harm or that a sexual act was committed. The defendants argue that her negligence claims cannot survive under New Hampshire law without an actionable injury, citing England v. Brianas, 166 N.H. 369, 371 (2014); Raymond v. Eli Lilly Co., 117 N.H. 164, 168 (1977); White v. Schnoebelen, 91 N.H. 273, 274-75 (1941).

Because Beaulieu did not respond to the defendants' motion, she offers no reason that § 1997e(e) would not apply to bar her negligence claims in Claims 5, 6, 7, and 8. Despite the apparent simplicity of applying § 1997e(e) to Beaulieu's negligence claims, that defense could raise substantial issues of state and federal law that would need to be addressed in an

8

appropriate case. Those potential issues, however, were not raised and are not addressed here.[2]

Therefore, in the specific context of this case, § 1997e(e) precludes damages for the injuries that Beaulieu alleges, and her negligence claims in Claims 5, 6, 7, and 8 are dismissed for lack of a remedy.

B. Claim 2

The defendants assert that they are protected by official immunity under RSA chapter 99-D from liability for negligence in Claim 2. In support, they cite the analysis in the June 28, 2018, order that analogized the Eighth Amendment standard to the official immunity standard. Doc. 54 at *33. They now argue that because the court dismissed the Eighth Amendment part of Claim 2, due to a failure to allege deliberate indifference to a substantial risk of harm, they are entitled to official immunity under RSA chapter 99-D.

RSA chapter 99-D protects officers from liability "for decisions, acts or omissions that are: (1) made within the scope of their official duties while in the course of their

---

[2] The government did not raise or address such issues. Beaulieu, a pro se prisoner, did not even respond to the motion, much less raise any issue in opposition to the application of § 1997e(e). The court declines to raise and analyze potential complex issues on a sua sponte basis. Those matters are better left to a case where there is sufficient briefing to allow a reasoned review.

9

employment; (2) discretionary, rather than ministerial; and (3) not made in a wanton or reckless manner." Farrelly v. City of Concord, 168 N.H. 430, 440 (2015). In Claim 2, Beaulieu alleges that Sgt. Matthew Stefanczak and CO Eric Turner were negligent in housing Beaulieu with Shawn Cook when they knew that Beaulieu was at risk of sexual victimization and Cook had a history of sexual assault. Beaulieu's allegations support a conclusion that the decision of where to house Beaulieu was within the scope of the official duties of Stefanczak and Turner in their jobs at the prison.

The remaining requirement is that the decision was not made in a wanton or reckless manner. In the June 28 order, the court found that Beaulieu had not alleged facts to show that Stefanczak and Turner decided to house Beaulieu with Cook with deliberate indifference to a substantial risk of harm to Beaulieu. The court concluded that contrary to the claim as construed on preliminary review Beaulieu did not allege that Cook had a history of sexual assault. Instead, Beaulieu alleged that Cook had a history of accusing others of sexual assault.

The defendants argue that the decision to house Beaulieu with Cook was not made in a wanton or reckless manner for the same reasons that the allegations did not show deliberate indifference to a substantial risk of harm. In support, the defendants note that the Supreme Court stated that deliberate

10

indifference to a substantial risk of harm, the Eighth Amendment standard, was "the equivalent of disregarding that risk." Farmer v. Brennan, 511 U.S. 825, 836 (1994).  The New Hampshire Supreme Court has defined wanton conduct as being willful disregard of safety or utter indifference to the consequences.  See, e.g., Franciosa v. Hidden Pond Farm, Inc., --- A.3d ---, 2018 WL 4517252, at *7 (N.H. Sept. 21, 2018) (construing "wanton" for purposes of immunity provided by RSA 508:19).  Reckless conduct is "'conduct evincing disregard of or indifference to consequences under circumstances involving danger to life or safety of others, although no harm was intended.'"  Kukesh v. Mutrie, 168 N.H. 76, 83 (2015) (quoting Migdal v. Stamp, 132 N.H. 171, 176 (1989)) (further internal quotation marks omitted).

  The court agrees that Beaulieu did not allege facts to show that Stefanczak and Turner acted recklessly or wantonly in deciding to house Beaulieu with Cook.  There are no allegations that Stefanczak or Turner knew that Beaulieu would be at risk of sexual assault from Cook and disregarded that risk.  Therefore, Stefanczak and Turner are entitled to official immunity under RSA chapter 99-D, which protects them from liability for Claim 2.  Claim 2 is dismissed.[3]

---

[3] Although the defendants raised additional grounds in support of their motion, it is not necessary to address them.

## Conclusion

For the foregoing reasons, the defendants' motion for judgment on the pleadings (document no. 82) is granted. Claims 2, 5, 6, 7, and 8 are dismissed.

The claims that remain in the case are Claims 3, 4, 9, 10, 11, 12, and 13.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 7, 2018

cc: Christopher Beaulieu, pro se
    Lawrence Edelman, Esq.
    Anthony Galdieri, Esq.
    Laura E. B. Lombardi, Esq.