```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Christopher Beaulieu
a/k/a Crystal Beaulieu[1]

   v.                                              Civil No. 16-cv-471-JD
                                                Opinion No. 2019 DNH 115
New Hampshire Governor, et al.


O R D E R

Crystal Beaulieu, who is proceeding pro se and in forma pauperis, brings claims against officers at the New Hampshire Prison for Men, arising from incidents that have occurred during her incarceration. The remaining defendants move for summary judgment on the ground that Beaulieu failed to exhaust the remaining claims as is required under 42 U.S.C. § 1997e(a). Beaulieu did not file a response to the motion.[2]


Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also

---

[1] Beaulieu is a transsexual female inmate who uses the name "Crystal". She prefers to be referred to with female pronouns.

[2] The motion for summary judgment was filed on April 15, 2019. The court allowed additional time, until July 15, 2019, but Beaulieu did not file a response.

Thomas v. Harrington, 909 F.3d 483, 490 (1st Cir. 2019).  For
purposes of summary judgment, the court considers the facts in
the light most favorable to the plaintiffs and draws all
reasonable inferences in their favor.  Roy v. Correct Care
Solutions, LLC, 914 F.3d 52, 57 (1st Cir. 2019).  "An issue is
genuine if it can be resolved in favor of either party, and a
fact is material if it has the potential of affecting the
outcome of the case."  Leite v. Gergeron, 911 F.3d 47, 52 (1st
Cir. 2018) (internal quotation marks omitted).  "A genuine issue
of material fact only exists if a reasonable factfinder,
examining the evidence and drawing all reasonable inferences
helpful to the party resisting summary judgment, could resolve
the dispute in that party's favor."  Town of Westport v.
Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017) (internal
quotation marks omitted); Flood v. Bank of Am. Corp., 780 F.3d
1, 7 (1st Cir. 2015).

## Background

Beaulieu's remaining claims arise from incidents that
occurred between December of 2016 and July of 2017.  She
alleges, pursuant to 42 U.S.C. § 1983, that officers at the New
Hampshire State Prison for Men used excessive force against her
and otherwise violated her First and Eighth Amendment rights.
The claims that remain in the case are as follows:

9. In retaliation for Beaulieu's First Amendment activities including her filing of a complaint against CO Brownlie, accusing that officer of sexually assaulting her, as well as Beaulieu's oral and written grievances, and lawsuits filed against other DOC staff members:
    d. On May 11, 2017, Sgt. Lydick inflicted unnecessary force on Beaulieu, causing her severe pain;
    e. Cpl. Wright told Beaulieu to kill herself;
    f. CO Young told other inmates that Beaulieu is a "rat" and a "skinner"; and
    g. On July 6, 2017, Beaulieu was subjected to unprovoked excessive force, tazed, kicked, and placed in a restraint chair by Sgt. Totten, CO Caruso, Lt. Carroll, Capt. Edmark, and Lydick.

11. On December 5, 2016, Sgt. Totten, while escorting Beaulieu between areas of the prison, after Beaulieu said she refused to live on a particular tier in SHU and then stated that she was suicidal, violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that:
    a. Sgt. Totten slammed Beaulieu's head against the window, and held her against the window by her arms; and
    b. After Beaulieu had smashed her own head against the window, Sgt. Totten slammed Beaulieu against a doorframe and then slammed her face into the floor, while Beaulieu was not resisting Totten's attempts to restrain her.

12. Shortly after May 11, 2017, in response to Beaulieu's accusation of sexual assault against CO Brownlie, Sgt. Lydick, Jason Caruso, Patrick Wright, and Shawn Stone violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that, without provocation:
    a. Lydick forced Beaulieu to the ground while she was in handcuffs, without allowing her the opportunity to get down voluntarily; and
    b. Brownlie, Lydick, Caruso, Wright, and Stone then got "on" Beaulieu while she was on the floor in handcuffs, causing her severe pain.

13. On May 27, 2017, in response to Beaulieu smashing her cup, which she did because she was suicidal and had been refused mental health care, CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick violated Beaulieu's Eighth Amendment right not to be subjected to excessive force maliciously or sadistically applied, in that:

a. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick forcibly pulled Beaulieu's arms through the tray slot in her door and handcuffed her, and put her on the floor in the SHU rotunda;
        b. Lydick shot Beaulieu with a Tazer;
        c. Edmark kicked Beaulieu in the face while she was on the floor;
        d. after Beaulieu got up, Caruso and Young pulled her arms while she was handcuffed, then dropped her to the ground on her shoulder;
        e. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick fell on top of her after Caruso and Young dropped her on the ground; and
        f. CO Caruso, CO Young, Capt. Edmark, Lt. Carroll, and Sgt. Lydick then placed Beaulieu in a restraint chair for four hours.

During that time and continuing to the present, the prison had a three-step grievance policy, which became effective on July 30, 2015. The New Hampshire Department of Corrections, Policy and Procedure Directive 1.16 sets forth the grievance and complaint procedures. See Doc. no. 119-17 ("PPD 1.16").

At the first step, a prisoner is required to send an Inmate Request Slip to the staff person at the lowest level who has authority to address the issue. PPD 1.16, § IV.A. The Inmate Request Slip must be sent within thirty days after the event that is the subject of the grievance. The Inmate Request Slip must provide enough information to allow an investigation, including the prisoner's name, the date of the event, names of staff involved, names of witnesses, the nature of the complaint or request, and what relief or action is requested. A separate Inmate Request Slip is required for different events.

4

If the prisoner is not satisfied with the response at the first step, the next step is to send a Grievance Form to the warden. PPD 1.16, § IV.B. The warden must receive the Grievance Form within thirty days after the prisoner received the response to the Inmate Request Slip. The same information is required, and the prisoner must show that he provided an Inmate Request Slip at the first step. The warden has thirty days to respond.

At the third step, after receiving the warden's response, the prisoner sends a Grievance Form to the office of the Commissioner of the Department of Corrections. PPD 1.16, § IV.C. The Grievance Form must be received within thirty days after the response from the warden and must include all of the same information. The Grievance Form must also show that the prisoner used step one and two in the process. The Commissioner's office has thirty days to respond in writing. The time limits and the appropriate forms are mandatory for the grievance process. PPD 1.16, § IV.E & F.

Counsel for the defendants received from the assistant to the Commissioner all of Beaulieu's Inmate Request Slips, Grievance Forms, and disciplinary reports for the period between January 1, 2015, and December 31, 2017. Based on the Bates numbers, there are 3,098 pages of Inmate Request Slips and Grievance Forms identified for the period between March 27,

2015, and September 17, 2017, when Beaulieu signed her amended complaint. There are 252 pages of disciplinary reports for the period between December 28, 2015, and September 17, 2017. Those documents were provided to Beaulieu in discovery.

The defendants provide a detailed chronology, supported by record citations, of Beaulieu's grievances and appeals. Because of its complexity and length, that recitation will not be repeated here. In addition, Beaulieu does not dispute the evidence or the facts drawn from the evidence.

The motion for summary judgment was filed on April 15, 2019. Beaulieu's response was due on May 15, 2019. As noted, no response was filed. On May 20, 2019, Beaulieu sent a letter to the clerk of court (doc. no. 123) in which she asked for summons in a civil action and asked what pleadings were pending in the case. In response, the clerk's office sent Beaulieu a copy of the docket sheet and the requested summonses the same day. For that reason, the court extended the time for Beaulieu's response in case she moved to file a late response to the motion for summary judgment. In the ten days since the docket was sent, Beaulieu has not filed anything.

## Discussion

The defendants move for summary judgment, arguing that Beaulieu did not exhaust the administrative remedies available

to her for the remaining claims.  Beaulieu did not respond to the motion.  As a result, the properly supported facts provided in the defendants' factual statement are deemed to be admitted by Beaulieu.  LR 56.1(b).

A.  Exhaustion Standard

A prisoner cannot bring claims under § 1983 to challenge the conditions of his confinement unless he has exhausted available administrative remedies.  42 U.S.C. § 1997e(a).  To satisfy that requirement, a plaintiff must properly use all of the steps provided in the prison grievance and complaint procedure.  Woodford v. Ngo, 548 U.S. 81, 93 (2006); see also Jones v. Bock, 549 U.S. 199, 218 (2007).  A plaintiff's failure to exhaust administrative remedies is an affirmative defense.  Id. at 216.

Available administrative remedies means the remedies that are "capable of use for the accomplishment of a purpose" and remedies that are "accessible or may be obtained."  Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (internal quotation marks omitted).  The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Id. at 1859.

The first circumstance occurs when "an administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. For example, the first circumstance would exist when "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." Id. Another example would be "if administrative officials have apparent authority, but decline ever to exercise it." Id.

The second circumstance occurs when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. An administrative procedure is opaque if "no ordinary prisoner can discern or navigate" the process. Id. The third circumstance occurs "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

B. Beaulieu's Use of the Grievance Process

The defendants demonstrate that, while Beaulieu filed Inmate Request Slips and some Grievance Forms related to the claims she brings in this case, she did not properly complete the administrative process, as required, for each event. The

chronologies of Beaulieu's grievances and the responses she received show that the administrative procedure functioned as it was supposed to do and that Beaulieu had ample access to the procedure. Because Beaulieu did not respond to the motion for summary judgment, Beaulieu has not challenged the defendants' showing or provided any contrary evidence or argument.

Therefore, the defendants have shown, based on undisputed facts, that Beaulieu did not exhaust the available administrative remedies with respect to each of her remaining claims. As a result, the claims are dismissed.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 119) is granted.

As all of Beaulieu's claims in this case have been resolved, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

July 24, 2019
cc: Christopher Beaulieu, pro se
    Lawrence Edelman, Esq.
    Anthony Gladieri, Esq.
    Laura E.B. Lombardi, Esq.

9